COMMONWEALTH *vs.* JOSEPH W. GIZICKI & another.[1]

Essex. September 22, 1970. — December 3, 1970.

Present: SPALDING, KIRK, SPIEGEL, & QUIRICO, JJ.

*Search and Seizure. Constitutional Law,* Search and seizure. *Evidence,* Photograph. *Firearms. Motor Vehicle,* Firearms. *Breaking and Entering. Larceny.*

A search without a warrant of an automobile at the place of arrest of three men for breaking and entering in the nighttime, conducted about two hours after the men had been taken from the place of arrest to a police station and while police had probable cause to believe that burglar's tools, guns, and stolen property were still concealed in the automobile, would have been constitutionally permissible. [295]

Where a police officer knew from his personal observations that a sign shop had been broken into by three men acting in concert, and had reason to believe that the purpose of the break was larceny and that partially concealed metallic objects on the floor of the automobile in which the men were arrested near the shop were either the means used to effect the break or the fruits of the larceny, or both, it was held immaterial to the validity of the affidavit accompanying an application for a search warrant of the automobile seeking burglar's tools and property stolen from the shop that it ultimately was established that the only larceny was effected at a nearby heating supply company and not at the sign shop. [295–296]

There was no error in including a reference to a machine gun in the affidavit accompanying an application for a search warrant where the information as to the gun was acquired by a senior officer in a police station who overheard a statement voluntarily made by one defendant to another defendant and who relayed it by telephone to the officer then before the magistrate applying for the search warrant. [296]

At the trial of indictments for breaking and entering the buildings of a heating supply company and a sign shop, there was no error in the ad-

---

[1] Leo A. Pawlicki.

mission in evidence of photographs of awls displayed in the heating supply company building so as to show their identity as to kind with awls found in a defendant's automobile; nor was there error in admitting a photograph of the sign shop's open door with a broken pane of glass, as showing the appearance of the door when first observed by a police officer after the break there. [297]

One defendant's ownership and operation of a motor vehicle in which a machine gun was found, and another defendant's participation with him in a criminal enterprise involving the use and occupancy of the vehicle, warranted denial of motions for directed verdicts on a charge that the defendants carried a machine gun under their control in that vehicle without a license so to do. [297]

Evidence at a trial warranted conviction of the defendants upon an indictment charging breaking and entering a certain building in the nighttime with intent to commit larceny, and larceny, therein, and upon an indictment charging breaking and entering another building with intent to commit larceny therein. [298]

THREE INDICTMENTS found and returned in the Superior Court on May 15, 1968.

Motions to suppress were heard by *Tomasello*, J., and the cases were tried before him.

*Gardner L. McDonald* for the defendants.

*Peter F. Brady*, Assistant District Attorney, for the Commonwealth.

KIRK, J. The defendants Gizicki and Pawlicki appeal under G. L. c. 278, §§ 33A–33G, from their convictions on three separate indictments. One indictment charged that they and another did break and enter in the nighttime the building of the Waverly Heating Supply Company with intent to commit larceny therein and did commit larceny therein. The second charged that they and another did break and enter in the nighttime the building of the Beverly Sign Company with intent to commit larceny therein. A third indictment charged that they and another carried under their control in a motor vehicle a loaded machine gun without a license.

Of their eight assignments of error, five attack the validity of the search warrant under which the police made a search of Pawlicki's automobile resulting in the discovery of three awls under the front seat, and a machine gun and two clips of ammunition containing sixty bullets in the trunk. The

remaining assignments of error involve rulings on evidence
and the denial of motions for directed verdicts on each in-
dictment.

At a hearing on the pre-trial motion to suppress and at
the trial the evidence essentially was as follows. On Febru-
ary 7, 1968, about 1 A.M. while Officers Malionek and Bossie
of the Beverly police department were patrolling in a police
cruiser, Officer Malionek saw the defendant Gizicki coming
out of the front door of the Beverly Sign Company building.
A pane of glass in the window of the front door was broken.
Gizicki ran to a car in a parking area about four feet in
front of the building. The car was facing the street with
its lights out and the motor running. The defendant
Pawlicki and another were seated inside. Upon approach-
ing the car Officer Malionek saw part of three shiny metallic
objects protruding from under the front seat. He did not
know what they were. He placed the defendants under
arrest, removed the car keys and locked it. He did not re-
move the objects under the front seat. Malionek then pro-
ceeded to Salem to apply for a search warrant from the clerk
of the District Court at the latter's home. Sergeant
Underwood at the time was in charge of the Beverly police
station and directed operations. The defendants were
brought to the station and charged with breaking and en-
tering in the nighttime. Sergeant Underwood overheard
one of the defendants say to another, "I hope they don't
find the machine gun in the trunk." In a telephone con-
versation with Officer Malionek, who was then at the clerk's
house, Sergeant Underwood informed him of the statement
and told him to include it in the affidavit for the warrant.
The affidavit filed with the clerk in pertinent part reads:
"I arrested three men for Breaking and entering in the
night-time [with] intent to commit a felony the Beverly
Sign Shop on Federal Street, Beverly, one of the men Leo A.
Pawlicki had a motor vehicle, Mass. Reg. 640-088 on the
Sign Shop property with engine running — one man was
coming from the building the other two were in the car —
I saw burglar tools in car — statement by said Pawlicki,

'I hope they don't get the machine gun.' . . . The property for which I seek the issuance of a search warrant is the following: . . . Burglar tools, guns and property stolen from the Beverly Sign Shop."

Having obtained the warrant at approximately 2:45 A.M., Officer Malionek returned to the location of the car in Beverly and seized the machine gun and the three objects from the car. These objects turned out to be awls missing from the Waverly Heating Supply Company which was located about sixty feet from the Beverly Sign Company. With the machine gun were seized two clips of ammunition containing a total of sixty rounds of .45 caliber bullets capable of being fired by the weapon described as a submachine gun, caliber .45, Thompson, Ml, 1928.

At the time of the arrest and at the time of the search of Pawlicki's car, Officer Malionek was unaware that a break had also been made the same night at the Waverly Heating Supply Company. He testified he had checked both buildings between 12:30 and 12:45 A.M. on February 7, 1968, and found them secure.

The defendants do not challenge the validity of the arrests. Indisputably Officer Malionek had probable cause to believe that a felony had been committed by the defendants. The defendants do attack the sufficiency of the affidavit and, in turn, the validity of the warrant, pursuant to which the search was purportedly made.

It is important to observe that in the case before us and in the cases to be discussed, the subject of the search is a motor vehicle, not a dwelling or office. The Supreme Court of the United States recognizes the distinction for constitutional purposes under the Fourth Amendment to the Constitution of the United States between houses and automobiles. *Carroll* v. *United States,* 267 U. S. 132, 153. *Dyke* v. *Taylor Improvement Mfg. Co. Inc.* 391 U. S. 216, 221.

1. The defendants, relying upon *Preston* v. *United States,* 376 U. S. 364, and quoting certain language from that opinion, contend that although the police had the right, incident to the arrest, to make a search of the vehicle, they did

not do so and accordingly lost that right, that thereafter a search warrant was required, that the warrant they obtained was invalid and the search under it was illegal. The language quoted reads in part: "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Page 367.

On June 22, 1970, however, the Supreme Court clarified and qualified the holding of the *Preston* case. In *Chambers* v. *Maroney*, 399 U. S. 42, Mr. Justice White noted that in the *Preston* case the arrest was for vagrancy with the attendant right to make a search of the vehicle incident to the arrest which was not exercised contemporaneously. In the *Chambers* case, there was not only the usual right, incident to the arrest, to make the search of the vehicle, but there was also, at the time of the arrest, probable cause to believe that a felony had been committed and that the fruits or the means of committing the crime (guns and money) were concealed in the vehicle. The court concluded that since the facts constituting the probable cause to make the search continued to exist after the vehicle had been removed to the station house, a search of the vehicle at the station house without a warrant was constitutionally permissible.

We are of opinion that in the case before us the search of the vehicle without a warrant at the place of arrest, though somewhat later in time, would have been constitutionally permissible, since the facts constituting the probable cause to make the search continued to exist.

2. We think that in any event the defendants' challenge to the sufficiency of the affidavit should be dealt with. They make several accurate assertions: (1) Officer Malionek at the time of the arrests and at the time of the application for the search warrant had no knowledge of any break at the Waverly Heating Supply Company and the owner of the company was unable to say with certainty until later in the day (February 7 and several hours after the search of the car) that anything (the awls) was missing; (2) There

was nothing to show at any time that anything had in fact been stolen from the Beverly Sign Company; and at 2 A.M. (about one hour before the search warrant was issued) the owner of the sign company was unable to say that anything had been stolen.

These negative assertions are beside the point. They do not vitiate the affidavit. Officer Malionek knew from his personal observations that the sign shop had been broken into by three men acting in concert; he had reason to believe that the purpose of the break was larceny and reason to believe that the partially concealed metallic objects on the floor of the car were either the means used to effect the break or were the fruits of the larceny, or both. It is immaterial, so far as the affidavit is concerned, that it ultimately was established, as the verdicts prove, that the larceny was effected at the Waverly Heating Supply Company rather than at the Beverly Sign Company.

3. We do not understand the defendants to argue that the affidavit was deficient concerning the machine gun. This information came voluntarily from the lips of one of the defendants to another defendant, was overheard by a senior officer who relayed it by telephone as police information to the officer who was then before the magistrate applying for the search warrant and acting as his agent or partner in law enforcement. See *Commonwealth* v. *Brown,* 354 Mass. 337, 345–346. In any case, the reference in the affidavit to the machine gun did not make the search under the warrant unlawful; the reference obviously was included out of an abundance of caution to insure that the scope of the search embraced the contraband weapon, the existence and location of which had become known only moments before to the police who were in charge of the case.

4. All things considered, we think that the Beverly police acted with restraint, but wisely, in the course which they pursued in searching the vehicle, especially in view of the somewhat unsettled state of the law at the time. As was said in *Commonwealth* v. *Blackburn,* 354 Mass. 200 at 203, "The search warrant was an unnecessary, but understand-

able precaution, . . . [making it] immaterial that there was a defect in the application for the warrant." We quote in a footnote at some length from *Chambers* v. *Maroney,* 399 U. S. 42, 51,[2] stating the law as the Supreme Court has most recently expounded it.

5. There was no error in admitting photographs of the awls displayed on the counter of the Waverly Heating Supply Company which showed their identity as to kind with the awls found in Pawlicki's car; nor was there error in admitting a photograph of the open door with broken pane of glass of the Beverly Sign Shop as indicative of its appearance when first observed by Officer Malionek on the morning of the break. *Commonwealth* v. *Sterling,* 351 Mass. 68, 72.

6. The motions for directed verdicts on the indictment charging that the defendants carried under their control in a vehicle a machine gun without a license so to do were properly denied. Pawlicki's ownership, operation and occupancy of the vehicle justified his conviction. *Commonwealth* v. *Moscatiello,* 257 Mass. 260, 262. Gizicki's participation in a criminal enterprise jointly with the others involving his use and occupancy of the vehicle warranted the submission to the jury of the issue of his knowledge of the fact that the machine gun was in the vehicle. *Common-*

----

[2] "In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, *the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution.* As a general rule, it has *also* required *the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll* . . . [267 U. S. 132, 153] holds a search warrant *unnecessary* where there is probable cause to search *an automobile stopped on the highway; the car is movable, the occupants are alerted,* and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible. Arguably, *because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained;* arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment" (emphasis supplied).

*wealth* v. *Miller*, 297 Mass. 285, 286–287.   There was sufficient evidence to submit the indictments charging breaking and entering in the nighttime with intent to commit larceny and larceny to the jury.

*Judgments affirmed.*