## J. H. CURRENS, trustee, *vs.* BOARD OF ASSESSORS OF BOSTON.

Suffolk.    April 7, 1976. — May 7, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Appellate Tax Board, Appeal.*

On a motion under Rule 5 of the Rules of Practice and Procedure of the Appellate Tax Board (1974), which provided that the board may "[f]or good cause shown" enlarge the time for the filing by a taxpayer of an application for abatement, the failure of the board to infer "good cause" in a situation where the inference was permitted, but not compelled, brought nothing to this court for review. [253]

This court would not consider facts set forth in an appellant's brief which were not stated or incorporated in the record on appeal. [253-254]

APPEAL from a decision of the Appellate Tax Board.

*James F. Sullivan* for the taxpayer.

*Robert E. Brooks,* Assistant Corporation Counsel, for the Board of Assessors of Boston.

QUIRICO, J.    The plaintiff (taxpayer) filed six applications for the abatement of taxes on its real estate after the expiration of the time limit fixed for such filing in an order of the Appellate Tax Board (board). About three years after the late filing the taxpayer filed a motion with the board asking it to amend its original order by adding five days to the time limit previously fixed. The extension, if granted, would have encompassed the date of the late filing by the taxpayer. The board denied the taxpayer's motion, and the taxpayer is appealing from the order of denial.[1] We hold that there was no error.

---

[1] We assume that the denial of this motion would ordinarily be followed by the entry of an order by the board either denying or dismissing the applications for abatement, but the record on appeal before us shows no such orders to have been entered. Since the parties have raised no question whether the cases are ripe for appeal to this court,

We summarize the relevant facts and proceedings. Although this appeal involves six applications for abatement of real estate taxes, each being for a separate condominium unit (unit) located in a single building, the parties, by agreement, have limited the record on appeal to the pertinent documents relating to only one of the six units. They have further agreed that the documents relating to the other five units are identical in all material respects to those reproduced in the record. Although we describe the facts and proceedings as though there were a single proceeding, our description is intended to apply to all six proceedings.

On November 12, 1971, the taxpayer seasonably applied to the board of assessors of the city of Boston (assessors) for the abatement of taxes assessed on his unit for the year 1971. The assessors failed to act on the application within three months of the date of its filing, with the result that the application was deemed to have been denied by *operation* of G. L. c. 59, § 64, as amended through St. 1965, c. 597, § 2.

On March 13, 1972, the taxpayer filed a petition with the board alleging that he had paid not less than one-half of the tax on the unit for 1971 and was unable to pay the balance, and praying that after a hearing he be granted leave to file an appeal from the assessors' denial of the requested abatement without requiring him first to pay the balance of the tax. General Laws c. 59, § 65B, as appearing in St. 1945, c. 621, § 7, authorized a member of the board, after a hearing on such a petition, "by order [to] grant leave to such petitioner to file such appeal, within ten days from the entry of said order, upon such conditions as may be imposed therein."

On March 21, 1972, a member of the board, after hearing, entered an order granting the taxpayer "leave to file

we do not do so. However, our consideration and decision of this appeal on its merits shall not operate as a precedent permitting the prosecution of appeals from interlocutory orders before the final disposition of the proceedings in which the orders were entered.

such appeal within ten (10) days from the entry of this Order upon the following conditions: that the unpaid balance of the tax for said year 1971 be paid on or before June 21, 1972." The taxpayer then filed his appeal with the board on April 5, 1972, which was after the ten-day period fixed by the statute (G. L. c. 59, § 65B) and prescribed by the board had expired.

The next action disclosed by the record on appeal before us occurred on May 15, 1975, when the taxpayer filed a motion with the board asking that its order of March 21, 1972, fixing a ten-day limit for the filing by the taxpayer of his application for abatement, be amended by changing the time limit to fifteen days. The requested amendment, if made nunc pro tunc, might prevail against any argument by the assessors that the application had not been seasonably filed, but we need not decide that point for the purposes of this case. The taxpayer's motion was accompanied by an affidavit of facts tending to explain why the application was not filed within the ten-day limit originally prescribed by the board.[2] The board heard the motion on May 27, 1975, and after receiving memoranda of law from both parties it denied the motion on June 4, 1975, stating no reason for its denial. The taxpayer's appeal from that denial is what is now before us.

---

[2] We summarize the facts stated in the affidavit which was signed by the taxpayer's attorney. There were seven condominium units in the building in question. The taxpayer had conveyed one unit to a purchaser and therefore owned only six units when it first applied for the abatement of the 1971 taxes. However, the taxpayer's attorney also filed such an application for the purchaser of the seventh apartment, and when that was denied by inaction of the assessors, the same attorney filed a petition with the board for leave to appeal the denial without paying the balance of the tax. The board allowed that petition as to the seventh apartment on March 28, 1972, with the result that the ten-day limit for filing the application for abatement with the board on that unit did not expire until April 7, 1972. The lawyer caused all seven applications to be filed with the board on April 5, 1972, with the result that one was timely and six were not. The late filing of the six resulted from the action of a former secretary of the lawyer in filing all seven notices from the board in a single file, with that dated March 28, 1972, and dealing with the seventh unit on top of the notices relating to the other six units which were dated March 21, 1972.

Before considering the taxpayer's argument in support of his appeal, we note our holding in *Louvre, Inc.* v. *Assessors of Boston,* 319 Mass. 727 (1946), on the subject of the power of a member of the board to extend the ten-day time limit provided by G. L. c. 59, § 65B, without prior payment of the full amount of the tax sought to be abated. In the *Louvre, Inc.* case we said: "Apart from the order of the single member under this statute, the taxpayer had no right to file the appeal. The statute gave no authority to a single member to grant leave to file the appeal after the expiration of ten days from the date of the order granting such leave, and the single member did not purport to do so. The appeal of the taxpayer filed more than ten days thereafter had no standing and could be given none by the board either as a matter of right or as a matter of discretion. The statute must be strictly followed. The appeal was not rightly on the files of the board and was properly removed therefrom by the allowance of the motion to dismiss."

The taxpayer acknowledges the holding of the *Louvre, Inc.* case and seeks to avoid its effect by pointing out that the present case can be distinguished therefrom in several respects. One such distinction is that in the present case the taxpayer filed a motion to amend the board member's order so as to extend the original time limit for filing the application for the abatement, whereas the taxpayer in the *Louvre, Inc.* case did not so move. Another is that here the assessors did not move to dismiss the application on the ground of late filing, whereas in the *Louvre, Inc.* case they did. A third distinction sought to be made is that there are now a number of provisions in various rules governing civil procedure which were not in effect at the time of the *Louvre, Inc.* case and which indicate and allow a more liberal approach toward the granting of relief from a failure to comply with a filing deadline where the failure was the result of excusable neglect.[3] Even assuming these distinc-

---

[3] Our own decisions do indeed indicate a "more liberal approach toward the granting of relief from the failure to comply" with certain

tions, they are merely distinctions without a difference with respect to the relief which the taxpayer can expect from this, an appellate court.

The principal argument of the taxpayer seems to be that, by Rule 5 of the Rules of Practice and Procedure of the Appellate Tax Board (1974), "[f]or good cause shown, the conditions imposed by an order allowing entry of an appeal [pursuant to G. L. c. 59, § 65B] may be modified or revised"; that the ten-day limit on the period for filing imposed by the order of March 21, 1972, was one of the "conditions" of the order; and that from the facts stated in the affidavit of the taxpayer's counsel, filed in connection with the motion of May 15, 1975, to extend the original time limit of ten days, the board could infer "good cause shown" for the failure to file within the original time limit. The problem with that argument is that it does not appear in the record that the board ever inferred, found or decided that the taxpayer's failure to file within the original time limit was due to any excusable neglect or was for other good cause shown. Assuming the board could have so found, it obviously did not do so. It simply denied the taxpayer's motion to amend without making or reporting any findings. To say that the board was permitted to draw a particular inference or to find particular facts does not mean that it was required to do so. The action of a fact-finding tribunal in failing to draw an inference or to find a fact in a situation where it was permitted, but not compelled, to do so, presents nothing for review by this court.

The taxpayer's attempt by his brief to place before us his contention that early in 1975 the assessors agreed to

procedural deadlines. For a discussion on this subject, see *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 78-81 (1975), and the cases cited therein. However, this trend has not been applied to cases involving a failure to file an application for the abatement of taxes within the time limited therefor by statute. For recent tax cases in addition to those cited in the *Schulte* opinion, see *William Rodman & Sons* v. *State Tax Comm'n,* 364 Mass. 557, 559 (1974), and *Sears, Roebuck & Co.* v. *State Tax Comm'n, ante,* 127, 129-130 (1976).

grant him an abatement and then did not do so because of the discovery of the late filing of the application with the board, while not refusing the abatement on the seventh unit which the taxpayers had previously conveyed away[4] is to no avail since those facts do not appear in the record on appeal. An appealing party may not by his brief attempt to place before an appellate court facts which are not stated or incorporated in the record on appeal. *Coonce* v. *Coonce,* 356 Mass. 690, 692-693 (1970). *Gorey* v. *Guarente,* 303 Mass. 569, 570-571 (1939). We therefore disregard that information.

For the reasons stated above, the action of the board on June 4, 1975, in denying the taxpayer's motion to amend which had been filed on May 15, 1975, is affirmed as to each of the taxpayer's six condominium units involved in this appeal.

*So ordered.*

---

[4] We refer to the following language in the taxpayer's brief: "In February 1975, when the statements (appeals) were reached for hearing by the Board, the appellee agreed to grant abatements of the taxes on all seven (7) of the petitions relating to unit-parcels (A-G incl.) but thereafter on or about May 1, 1975 appellant's attorney was informed that abatements would not be made on the six (6) statements (appeals) of the appellant due to their late filing on April 5, 197[2]. . . .

"Abatement was not refused on the seventh unit-parcel assessed to appellant's grantee because when filed on April 5, 197[2] . . . it was within ten (10) days of the order thereon dated March 28, 1972."