COMMONWEALTH *vs.* DAVID B. GRAY.

Middlesex.     February 22, 1977. — May 10, 1977.

Present: HALE, C.J., KEVILLE, GOODMAN, GRANT, ARMSTRONG, & BROWN, JJ.

*Firearms.   Motor Vehicle,* Firearms.   *Practice, Criminal,* Directed verdict.

At the trial of a defendant charged with violations of G. L. c. 269, § 10, evidence that a rifle and a shotgun were lying in plain view on the rear seat of an automobile which the defendant was driving was sufficient to warrant the denial of his motion for directed verdicts. [298-299] BROWN, J., with whom GOODMAN, J., joined, dissenting.

At the trial of a defendant charged with violations of G. L. c. 269, § 10, the judge erred in instructing the jury that, if they found the defendant had knowledge that two guns were in an automobile which he was driving, they were required to find that he had "control" of the weapons within the meaning of § 10. [299]

The record of a criminal trial did not support the defendant's contention that he was placed twice in jeopardy for the same offense in violation of the Fourteenth Amendment to the United States Constitution. [299-300]

COMPLAINTS received and sworn to in the Fourth District Court of Eastern Middlesex on June 2, 1975.

On appeal to the Superior Court, the cases were tried before *Faraci, J.,* a District Court judge sitting under statutory authority.

*Alan I. Silberberg* for the defendant.

*Roberta Thomas Brown,* Legal Assistant to the District Attorney, for the Commonwealth.

BROWN, J.    The defendant appeals (G. L. c. 278, §§ 33A-33G) from convictions on four complaints charging him

with violations of G. L. c. 269, § 10.[1] We reverse those convictions.[2]

A jury trial was held on May 19, 1976. At the close of the Commonwealth's case the defendant moved for directed verdicts of not guilty. The motion was denied, and the defendant saved his exceptions. Upon completion of the entire case the motion was renewed and was again denied.

In the Commonwealth's case, there was evidence from which the jury could have found the following facts. At approximately 11:30 P.M. on April 19, 1975, a policeman observed the defendant operating a motor vehicle in an erratic manner. The car then stopped in front of a store, and three individuals got out and went inside. They subsequently returned to the car and started to drive off. As the car was pulling "out of the parking space" the policeman directed the defendant, who was the driver of the car, to "pull to the curb." After approaching the car the policeman observed a shotgun and a rifle lying in plain view on the back seat. The policeman asked the defendant to step out of the car. When he did, the policeman observed various signs of intoxication and concluded that the defendant was drunk. The defendant was asked whether he had a firearm identification card, and he stated that he did not. The policeman removed both weapons from the rear of the car, examined them and determined that they were loaded. The defendant and the two passengers who had been in the car were then placed under arrest. One of the passengers had been seated in the right front of the

---

[1] The defendant was also charged with and convicted of operating an automobile while under the influence of alcohol, and negligently operating an automobile so as to endanger the lives and safety of the public. No appeal has been taken from either of those convictions.

[2] The author of this opinion and Justice Goodman concur with the conclusions reached by the court that the charge to the jury was incorrect but disagree with the majority's conclusion that the evidence at the close of the Commonwealth's case on the defendant's control of the weapons was sufficient to permit the case to go to the jury. For that reason the author, joined by Justice Goodman, has filed a separate dissenting opinion on this issue.

car, and the other had been in the right rear. When questioned, all three of the occupants denied owning the weapons.

1. The defendant's principal contention on appeal is that the judge erred in failing to grant his motion for directed verdicts, made at the close of the Commonwealth's case. See *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 612-613 (1976), and cases cited. In passing upon this motion we consider only the evidence presented by the Commonwealth prior to the motion. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). See G. L. c. 278, § 11. The standard of review "is whether the evidence read in its aspect most favorable to the Commonwealth . . . is such that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 786 (1975). *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445 (1933). See *Commonwealth* v. *Duffy,* 4 Mass. App. Ct. 655, 656 (1976), and cases cited.

Applying this standard, the majority of the entire court are of the opinion that the evidence was sufficient for the judge to submit to the jury the complaints charging the defendant with being unlawfully in control of the rifle and shotgun. The policeman's testimony that he observed the weapons in plain view in the back seat of the car warranted the inference that the defendant knew of the presence of the weapons. The policeman also testified that the defendant was the driver of the car. These factors, taken together, were sufficient to permit the jury to infer that the weapons were under the defendant's control in a vehicle. *Commonwealth* v. *Gizicki,* 358 Mass. 291, 297 (1970). The majority believe that *Commonwealth* v. *Boone,* 356 Mass. 85, 87 (1969), and *Commonwealth* v. *Albano,* 4 Mass. App. Ct. 843, further appellate review granted, 371 Mass. 900 (1976), are not controlling on this point, because in those cases there was insufficient evidence to warrant an inference that the defendant knew of the presence of the weap-

ons. We need not consider whether the evidence permitted findings of control against either or both of the defendant's companions, as nothing turns on whether the defendant's control was exclusive or joint. *Commonwealth* v. *Dinnall,* 366 Mass. 165, 168-169 (1974).

2. The judge charged the jury that if the defendant had "knowledge that [the guns] were there, he has control. . . . He doesn't have to have possession, per se. All he has to do in this case is know those guns are in his car, that he owned that car and that he was operating it that day, and he has control, and if he has control of those guns, whether he owns them or not, he is guilty . . . ." The effect of this instruction was to equate knowledge of the weapons with control. Although knowledge of the presence of weapons is certainly a factor to be considered in determining whether a defendant has violated § 10 (*a*), as appearing in St. 1975, c. 113, § 2 (*Commonwealth* v. *Boone, supra; Commonwealth* v. *Jackson,* 369 Mass. 904, 916-917 [1976]; *Commonwealth* v. *Albano, supra*), the statute requires that a defendant carry a weapon "on his person or *under his control in a vehicle . . .*" (emphasis supplied). "Control" requires that one exercise dominion over a particular item. See *Commonwealth* v. *Duffy,* 4 Mass. App. Ct. 655, 659 (1976), and cases cited. Knowledge of the presence of the weapons may warrant an inference that the driver of the vehicle is in control of the weapons, but such knowledge does not require that any such inference be drawn. The judge's charge required the jury to convict the defendant if they concluded that he knew of the presence of the weapons in the car. This was error.

3. The defendant attempts by his brief to place before us his contention that the jury trial beginning on May 19, 1976, caused him to be placed twice in jeopardy for the same offense in violation of the Fifth Amendment to the United States Constitution, as made applicable to the States by the Fourteenth Amendment.[3] *Benton* v. *Mary-*

---

[3] It seems appropriate to point out at this juncture the analogous provision in the Massachusetts General Laws, G. L. c. 263, § 7, to which the defendant made no reference.

*land,* 395 U. S. 784 (1969). An appealing party may not by his brief attempt to place before this court facts which are not incorporated in the record on appeal. *Currens* v. *Assessors of Boston,* 370 Mass. 249, 253-254 (1976). All the record reflects is an unexplained mistrial as to which no exception was taken.

The judgments on all four complaints are reversed, and the verdicts are set aside.[4]

*So ordered.*

This case was initially heard by a panel composed of Justices Keville, Grant, and Brown, and was thereafter submitted on the record and briefs to Chief Justice Hale and Justices Goodman and Armstrong, all of whom took part in the decision of this case in accordance with the provisions of Rule 1:18 of this court, as amended effective February 27, 1975, 3 Mass. App. Ct. 801.

BROWN, J. (dissenting, joined by Goodman, J.). It is our opinion that the evidence was insufficient for the judge to submit to the jury the complaints charging the defendant with being in control of the shotgun and rifle. There was no evidence of who owned either of the guns. The only direct evidence presented by the Commonwealth which could have indicated that the defendant was in control of the weapons was that he was driving the car in which they were found. Contrast *Commonwealth* v. *Gizicki,* 358 Mass. at 297. However, the other two passengers in the car were in close proximity to the guns, and the person in the back was seated next to the guns. Although the jury could have found that the defendant knew of the presence of the weapons at least as early as the time when

---

[4] No question has been raised as to the sufficiency of complaints 75-2820 or 75-2821 on the ground of their failure to negate either expressly or implicitly more than one of the exceptions in G. L. c. 269, § 10(*a*). The crimes charged in those complaints appear from the evidence to be identical with those in 75-2819 and 75-2824 respectively, in any event.

he got back into the car, that in and of itself was insufficient as matter of law to establish that the defendant was in control of the weapons. See *Commonwealth* v. *Duffy,* 4 Mass. App. Ct. at 659-660. As it was at least equally likely that one or more of the other persons in the car exclusively controlled the weapons, the jury were forced to rely on conjecture or surmise in finding the defendant to be in control of the guns. A verdict of guilty on such a premise cannot stand. See *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401 (1940).

There is nothing in the record that suggests that the defendant had participated or was about to participate, individually or jointly, in any activity involving the guns (contrast *Commonwealth* v. *Gizicki, supra)*, and it is not enough merely "to place the defendant and the weapon[s] in the same car." *Commonwealth* v. *Boone,* 356 Mass. at 87. Accord, *Commonwealth* v. *Albano,* 4 Mass. App. Ct. at 844. See and contrast *Commonwealth* v. *Maguire,* 108 Mass. 469, 471 (1871) ("there was other evidence"); *Commonwealth* v. *Johnson,* 199 Mass. 55, 62 (1908) ("other circumstances appearing in evidence"); *Commonwealth* v. *Guerro,* 357 Mass. 741, 752 (1970) ("other evidence in the case"). See also *Brown* v. *State,* 481 P. 2d 475, 477 (Okla. Crim. App. 1971). Accordingly, we conclude that, in these circumstances, the defendant's motion for directed verdicts of not guilty should have been granted.