COMMONWEALTH vs. STEPHEN J. DEAGLE.

Suffolk.   April 16, 1980. — September 29, 1980.

Present: ARMSTRONG, ROSE, & PERRETTA, JJ.

*Conspiracy.  Narcotic Drugs.*

Evidence that police officers, who had been observing the occupants of
    an automobile drinking and smoking for twenty minutes, surrounded
    the automobile, and saw the driver, who appeared to be "extremely
    high on something," take a bag later found to contain a controlled
    substance from the front seat and stash it under the seat was insuffi-
    cient to warrant a finding that a rear-seat passenger had conspired to
    violate the Controlled Substances Act. [565-569] PERRETTA, J., con-
    curring.

COMPLAINT received and sworn to in the Dorchester Di-
vision of the District Court Department on February 13,
1979.

The case was tried in the jury session of the Boston Muni-
cipal Court Department before *Canavan, J.*

*J.W. Carney, Jr.,* for the defendant.

*William R. Wilson,* Legal Assistant to the District At-
torney (*Michael J. Traft,* Assistant District Attorney, with
him) for the Commonwealth.

ARMSTRONG, J.   Around 12:45 P.M. on February 13, 1979,
police officers who had been observing the occupants of a
car through binoculars for twenty minutes surrounded the
car and saw the driver, who appeared to be "extremely high
on something," take a plastic bag from the seat between
himself and the front-seat passenger and stash it under the
seat.   The police officers opened the car, smelled an odor
recognized by them to be that of burning phencyclidine
(otherwise known as "PCP" or "angel dust"), and arrested
the three occupants.   The bag was found to contain twenty-
seven packets, described by one of the police officers as

"ten-dollar packets," of a greenish "herb" mixed with angel dust.

The defendant was the passenger in the rear seat. He, like the driver and the front-seat passenger, had been observed drinking and smoking. He was charged with "conspiracy to violate the [C]ontrolled [S]ubstance[s] [A]ct."[1] Asked for particulars, the Commonwealth responded that the "manner" of the offense was: "Did conspire with others to violate the [C]ontrolled [S]ubstance[s] Act at or around [1310 Dorchester Avenue, Dorchester]. Specifically, the drug PCP . . . ." The "means" was said to be: "Was in automobile with others together with many bags or packets of the above mentioned class C substance." The defendant moved for a further bill of particulars, asking for disclosure of "[t]he specific violation of the [C]ontrolled [S]ubstance[s] [A]ct alleged to have been the object of the conspiracy." That motion was resisted by the Commonwealth and was denied by a judge other than the trial judge, who would not thereafter reconsider that denial, in deference to the ruling of the first judge. The reason for the original denial, apparently, was that the motion had been filed only one day before the scheduled date of trial; but the consequences of the denials were unfortunate, because the obscurity of the charge led to needless wrangling between counsel during the trial and to troublesome voids in closing arguments and in the judge's instructions to the jury. The latter found the defendant guilty as charged; and counsel were still debating, as late as the time of sentencing, precisely what section of the Controlled Substances Act the jury had found the defendant guilty of conspiring to violate — a question of controlling significance under G. L. c. 94C, § 40, which makes a conspiracy to violate any provision of the Controlled Substances Act punishable by the maximum penalty pre-

---

[1] The defendant was also charged with drinking an alcoholic beverage on a public way, but the judge directed a verdict on that charge due to the Commonwealth's failure to introduce the relevant ordinance in evidence.

scribed for violation of that provision.[2]  See *Commonwealth*
v. *Soule,* 6 Mass. App. Ct. 973 (1979).  *Commonwealth* v.
*Dellinger, ante* at 549 (1980).  See also *Commonwealth* v.
*Mitchell,* 350 Mass. 459, 465 n.6 (1966).

Defense counsel had moved for a directed verdict at the
close of the Commonwealth's evidence (the defendant
thereafter put on no witnesses), and the motion was denied.
For purposes of reviewing the correctness of that ruling, we
make certain assumptions in favor of the Commonwealth:
namely, that the charge, as specified, was conspiracy to
possess angel dust with intent to distribute it; that knowing
possession of twenty-seven "ten-dollar" packets of angel
dust would justify a finding of intent to distribute; and that
a conspiracy simply to possess angel dust is a lesser offense
included within a charge of conspiracy to possess angel dust
with intent to sell.  See *Commonwealth* v. *Dellinger, supra*
at 557-558.

The evidence was not particularly brief (indeed, it was
somewhat repetitious), but it was notable for its lack of
detail.  It was as summarized in the first paragraph of this
opinion.  No detail of significance has been omitted from
that summary, other than that no person approached or left
the car during the twenty minutes it was under observation
by the police, that the two occupants in the front seat were
observed turning around talking to the defendant in the rear
seat, that the police patted down each of the three oc-
cupants, and that the pat-down of the defendant revealed
no contraband.  There was no evidence as to what the pat-
down of the defendant *did* reveal (e.g., the presence or
absence of cigarettes), nor was there evidence concerning

---

[2] The Commonwealth, which had been evasive on the subject during the
trial, argued at sentencing that the defendant had been found guilty of con-
spiracy to possess with intent to distribute, the maximum penalty for which,
as a first offense, is fixed by § 32 as imprisonment for five years in State pris-
on and a fine of $10,000.  The defendant argued that the maximum penalty
was that fixed for simple possession under § 34, imprisonment for one year
and a fine of $1,000.  The judge, without expressly resolving that question,
imposed a one-year sentence, with the final three months suspended.

the results of the pat-down of the front-seat occupants. The driver was described as "high on something," but there was no testimony concerning the condition of the defendant or the front-seat passenger. There was no evidence of statements by any of the three at the time of arrest or of actions which could be interpreted as inculpatory, other than the driver's act of concealing the plastic bag of PCP packets under the front seat.

The charge, according to the assumption set out above, was conspiracy to possess angel dust with intent to sell. The essence of such a charge is not possession, but an agreement to possess. *Commonwealth* v. *Zakas,* 358 Mass. 265, 268-269 (1970). See *Commonwealth* v. *Winter,* 9 Mass. App. Ct. 512, 526 (1980). There is no evidence in this case of an agreement concerning possession unless such an agreement can be inferred from the fact of possession. See *Commonwealth* v. *Shea,* 323 Mass. 406, 412-413 (1948). If the evidence warrants a finding that the defendant possessed angel dust in concert with the other occupants of the car, we assume, without deciding, that such actual joint possession implies an agreement to possess and hence may be charged as a conspiracy to possess. But, as independent evidence of an agreement is lacking, that is to say, as the train of logic is that the existence of a conspiracy is to be inferred, if at all, from the fact of doing the very thing which is the object of the alleged conspiracy, it follows that a conspiracy is not made out unless the act, in this case possession, is itself made out. Compare *United States* v. *Murray,* 527 F.2d 401, 409 (5th Cir. 1976). See *Commonwealth* v. *Schoening,* 379 Mass. 234, 239-240 (1979). Mere presence in the company of one known to possess a controlled substance has not been a crime since the repeal of G. L. c. 94, § 213A (by St. 1971, c. 1071, § 2), except where the substance is heroin (G. L. c. 94C, § 35, as amended by St. 1972, c. 806, § 25). We look, therefore, to see if the evidence warranted a finding that the defendant possessed angel dust.

It is well settled that, to warrant a finding of possession of contraband, "[i]t is not enough to place the defendant and

the [contraband] in the same car." *Commonwealth* v. *Boone*, 356 Mass. 85, 87 (1969). *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977). *Commonwealth* v. *Bennefield*, 373 Mass. 452, 453 (1977). Knowledge of the contraband is an essential element. *Commonwealth* v. *Boone*, *supra*. *Commonwealth* v. *Jackson*, 369 Mass. 904, 916-917 (1976). *Commonwealth* v. *Almeida*, 381 Mass. 420, 422 (1980). A majority of the panel think that the evidence warranted a finding that the defendant knew of the bag and its contents. From the evidence of one of the policemen that he could smell burning angel dust, the jury could infer that angel dust was being smoked in the car and could infer that the angel dust came from the bag; and although it is possible that one could be in the company of others who are smoking a controlled substance without realizing that fact, an inference to the contrary is permissible because it is reasonable and possible; it need not be necessary or inescapable. *Commonwealth* v. *Albano*, 373 Mass. at 134, and cases cited. *Commonwealth* v. *Xiarhos*, 2 Mass. App. Ct. 225, 232 (1974), and cases cited. See also *Commonwealth* v. *Nelson*, 370 Mass. 192, 200-201 (1976); *Commonwealth* v. *Casale*, 381 Mass. 167, 173-174 (1980). Compare the facts of *Commonwealth* v. *Albano*, *supra*; contrast those of *Commonwealth* v. *Boone*, *supra*; *Commonwealth* v. *Bennefield*, *supra*; *Commonwealth* v. *Scarborough*, 5 Mass. App. Ct. 302 (1977).

Knowledge of the controlled substance, however, is not the equivalent of possession. *Commonwealth* v. *Gray*, 5 Mass. App. Ct. 296, 299 (1977). Possession implies "control and power" (see *Commonwealth* v. *Harvard*, 356 Mass. 452, 458 [1969]; *Commonwealth* v. *Smith*, 3 Mass. App. Ct. 144, 146 [1975]), exclusive or joint (see *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 [1974]), or, in the case of "constructive possession," knowledge coupled with the ability and intention to exercise dominion and control (see *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704 [1974]; *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 [1976]). Possession may often be inferred from proximity conjoined

with knowledge; but the reasonableness of such an infer-
ence depends upon the circumstances. See Whitebread &
Stevens, Constructive Possession in Narcotics Cases, 58
Va.L.Rev. 751 (1972). Being a passenger in the rear seat of
a car obviously does not, without more, imply possession of
the car's contents. In *Commonwealth v. Gray, supra,* a
majority of a divided court held that the driver of a car with
two passengers, one in front and one in the rear, could be
found from those facts alone to be in possession of contra-
band lying in plain view on the back seat. The court ex-
pressed the caution that a corresponding inference would
not necessarily be warranted as to a passenger. In this case,
where the bag in question lay on the front seat next to the
driver, and where the driver exercised control over the bag
by attempting to conceal it, we are of the opinion that some
additional evidence beyond that showing mere knowledge is
necessary to make out a case that possession of the bag was
shared by the defendant. Contrast *Commonwealth v.
Miller,* 297 Mass. 285 (1937).

The case was argued to the jury by both counsel as if there
had been testimony that the three occupants of the car were
observed passing a cigarette among themselves and smoking
it. Such testimony would have warranted an inference that
the defendant was smoking angel dust and supported a guil-
ty verdict on a charge of possession, at least of that cigarette,
if not of the bag from which the filler of the cigarette pre-
sumably came. But the testimony was simply that the three
men were observed smoking, without a suggestion that they
were smoking the same thing. It is hard to imagine that the
testimony could not have been more detailed on this point:
it might have sufficed, for example, to show that the pat-
down of the three men turned up no cigarettes of a lawful
nature. But the evidence as introduced was entirely consis-
tent with the driver's having been the only person in the car
smoking angel dust.

In these circumstances we are of the opinion that the evi-
dence fell short of making out a case of possession against
the defendant. The evidence taken in the light most favor-

able to the Commonwealth went no further then to prove that the defendant remained in the presence of a companion (or companions) who he knew were smoking angel dust. But, as discussed earlier, it is not a crime under our statutes merely to be in the company of persons who possess a controlled substance, unless the substance is heroin. For the reasons discussed above, the Commonwealth's position is not enhanced by charging a "presence" case as a conspiracy, absent some additional evidence indicating an agreement or concerted possession from which an agreement to possess may be inferred. And, on general principles, "neither association with conspirators nor knowledge of illegal activity constitute proof of participation in a conspiracy." *Roberts* v. *United States,* 416 F.2d 1216, 1220 (5th Cir. 1969). It follows that the defendant was entitled to the allowance of his motion for a directed verdict.

The judgment is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*

PERRETTA, J. (concurring). While I accept the assumption that a conspiracy to possess angel dust is a lesser offense included within a charge of conspiracy to possess that drug with the intent to sell it, see *Kuklis* v. *Commonwealth,* 361 Mass. 302 (1972); *Waker* v. *United States,* 344 F.2d 795 (1st Cir. 1965), I find it unacceptable that no one can say with certainty what crime the defendant was found to have conspired to commit. See note 2 to the majority opinion. Because today we advise the defendant that the Commonwealth failed to sustain its burden of proof as to either offense, it is unnecessary to comment further upon that aspect of the proceedings.

I do not agree that the Commonwealth presented sufficient evidence from which it could reasonably be inferred that the defendant had knowledge of the bag and its con-

tents. Thus, while I reach the same conclusion as the majority, I do so sooner because it is at that point that I conclude that the defendant's motion for a directed verdict should have been allowed.