COMMONWEALTH *vs.* ELIAS A. VALENTIN.

No. 01-P-1334.

Norfolk. June 24, 2002. - August 29, 2002.

Present: GREENBERG, RAPOZA, & MASON, JJ.

*Firearms. Motor Vehicle,* Firearms. *Evidence,* Firearm, Hearsay, Knife, Relevancy and materiality.

The evidence at a criminal trial was sufficient to show that the defendant possessed a firearm without a license, where the firearm was found not only in a vehicle that the defendant was driving, but also in open view in a backpack containing the defendant's paystub and a shirt that apparently belonged to the defendant, and where the defendant displayed strong consciousness of guilt by refusing to stop for the police and leading them on a high-speed chase. [671]

The judge at a criminal trial erred in permitting police officers to refer in their testimony to the possible involvement of the defendant's vehicle in an earlier armed robbery that had occurred out of State, where there was no issue as to why the police had initially stopped the vehicle; however, the admission of the testimony did not create a substantial risk of a miscarriage of justice, where the Commonwealth's evidence was strong with respect to each of the charges against the defendant, the prosecutor made no reference to the offending testimony in closing argument to the jury, and the judge gave a strong curative instruction directing the jury to draw no inference from the testimony. [671-675]

This court concluded that the judge at a criminal trial had not erred in making various evidentiary rulings. [675-676]

COMPLAINTS received and sworn to in the Stoughton Division of the District Court Department on August 14, 2000.

The cases were tried before *Thomas A. Connors,* J.

*Jennifer H. O'Brien* for the defendant.

*Tracey A. Cusick,* Assistant District Attorney, for the Commonwealth.

MASON, J. As a result of the police being led on a high-speed car chase on Route 95 from Providence, Rhode Island, to Canton, Massachusetts, during the early morning hours of

Sunday, August 13, 2000, a complaint issued against the defendant from Stoughton District Court. The complaint charged the defendant with refusing to identify himself while operating a motor vehicle, operating a motor vehicle negligently, leaving the scene after property damage (three counts), speeding, failing to stop for a police officer, assault and battery by means of a dangerous weapon (three counts), furnishing a false name to a police officer, and carrying a firearm without a license. The complaint also charged the defendant with being a fugitive from justice and being a fugitive from justice upon a court warrant, but the parties stipulated prior to trial that neither of these latter charges would be submitted to the jury.

After a trial by jury, the judge allowed the defendant's request for a required finding of not guilty on the charges of refusing to identify himself while operating a motor vehicle, assault and battery by means of a dangerous weapon, and furnishing a false name to a police officer. The defendant was convicted on the charges of operating a motor vehicle negligently, leaving the scene after property damage, failing to stop for a police officer, and carrying a firearm without a license. He was also found responsible on the charge of speeding.

On appeal, the defendant claims that there was insufficient evidence to warrant his conviction for carrying a firearm without a license. He also claims that the judge erred in allowing in evidence certain prejudicial hearsay testimony and certain other items of evidence. We agree that certain extrajudicial statements were wrongly admitted but conclude that, in the circumstances of this case, they did not give rise to a substantial risk of a miscarriage of justice. We therefore affirm the convictions and the responsible finding on the speeding charge.

*Background.* The pertinent facts that the jury could have found were as follows: On Sunday, August 13, 2000, at about 2:00 A.M., Officer Sean Carroll of the Providence, Rhode Island, police department, while on patrol in a marked cruiser, stopped a white Toyota sport utility vehicle (SUV) on a small dirt road leading into a parking lot behind an apartment complex in South Providence. Prior to making the stop, Officer Carroll activated the cruiser's blue lights and sirens. He also called for backup.

Officer Carroll approached the driver's side of the vehicle and used his flashlight to illuminate the inside of the vehicle.

He observed the driver and three other individuals seated in the vehicle. Officer Carroll instructed the driver to stop the vehicle and turn off the engine. Meanwhile, a second Providence police officer, John Lough, arrived in a cruiser. Two additional police officers, mounted on horses, also arrived to provide backup.

The driver did not obey Officer Carroll's instructions. Rather, he began to drive the SUV backwards and forwards in an apparent effort to turn the car around in the narrow driveway. Officer Carroll attempted to pull open the front door, but found that it was locked. He then attempted to break the window with his flashlight, but the vehicle drove into him, knocking him to the ground. At this point, Officer Carroll heard what he believed were four or five gunshots coming from the vehicle, and he therefore took cover behind a parked minivan.

The SUV backed across the length of the parking lot and proceeded through an opening at the other end out onto a street leading to Route 95. Officer Carroll reentered his cruiser and followed the vehicle. Officer Lough and several other Providence police officers also joined in the pursuit of the SUV, which proceeded north on Route 95 at speeds of up to 135 miles per hour.

Just after it had crossed into Massachusetts, the SUV hit and bounced off a car being driven by Steven Varrieur. Farther up the highway, the SUV also hit cars being driven by Vincenzo Palladino and Michael Haliotis.[1] By this time, several Massachusetts State police officers had joined in the pursuit. Additionally, a Massachusetts State police officer deployed "stop sticks"[2] in the middle of Route 95, about a mile before its intersection with Route 128.

The SUV passed over the stop sticks and then careened off the road into a wooded area near the ramp leading from Route 95 to Route 128. A posse of officers promptly converged on the vehicle and apprehended two individuals, Carmelo Maldonado and Carlos Richard, who were standing near the vehicle. A

---

[1]These collisions formed the basis of the three counts of leaving the scene after causing property damage.

[2]"Stop sticks" are designed to puncture the tires of a vehicle passing over them in a manner causing the tires to deflate sufficiently slowly that the vehicle will be stopped safely.

canine unit then arrived, and the police used a loud speaker to warn the two other persons believed to have run from the car that the dogs would be released to find them if they did not come out of hiding. At that point, the defendant and an additional individual, Ortez Sanchez, emerged from the woods and surrendered to the police. All four men were arrested and taken to the State police barracks for booking.

A tow truck pulled the SUV back up to the roadway. Officer Jose Deschamps of the Providence police entered the vehicle and saw the butt of a gun protruding from a green backpack located in a storage area behind the back seat. He did not remove these items. Rather, the vehicle was secured and towed to the police garage in Providence. Officer Deschamps followed the vehicle as it was being towed.

After the vehicle had arrived back in Providence, Detective Robert Padessa of the Providence police photographed the vehicle and conducted a search of its interior. Detective Padessa had earlier inspected the area behind the apartment complex where the vehicle had initially been stopped, and had there discovered three spent .40 caliber shell casings which matched the weapons carried by Providence police officers. During his subsequent search of the vehicle, Detective Padessa discovered in the rear storage area, which could be accessed from the back seat, the green backpack previously observed by Officer Deschamps. Within the backpack, he found a .25 caliber Beretta pistol, the stub of a paycheck issued to "Elias Valentin," and a shirt with the company logo "Washington Inventory Service," which was the company listed on the stub of the paycheck. Detective Padessa also found a knife located under the front passenger seat of the vehicle.

At trial, Officers Carroll and Lough, several of the other officers who were involved in the chase, Detective Padessa, and the three individuals who were driving the cars hit by the SUV all appeared as witnesses for the Commonwealth, and testified to the events just described. Both Officers Carroll and Lough identified the defendant as the driver of the SUV.

The defendant did not present any evidence. His primary defense was that he was not in fact the driver of the SUV, and his trial strategy was to raise doubts about the accuracy of the

officers' identification of him as the driver, as well as his knowledge that a gun was present in the car.

1. *Sufficiency of the evidence.* The defendant argues that the evidence introduced at trial tended to show only that he was present in the SUV where the weapon was discovered, but was insufficient to show either that he knew that the weapon was in the vehicle, or that he had the power and intent to exercise control over the weapon. Such knowledge, power and intent are essential elements of a showing of a constructive possession of a firearm. See *Commonwealth* v. *Boone,* 356 Mass. 85, 87-88 (1969); *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977).

It is settled, however, that the requisite knowledge, power and intent to exercise control over a firearm may be shown by "presence, supplemented by other incriminating evidence." *Commonwealth* v. *Albano, supra* at 134, quoting from *United States* v. *Brimley,* 529 F.2d 103, 108 (6th Cir. 1976). Here, the gun was discovered not only in a vehicle that the defendant was driving, but also in open view in a backpack containing the defendant's paystub and a shirt that apparently belonged to the defendant. The defendant also displayed strong consciousness of guilt by refusing to stop for the police, and then proceeding on the wild chase we have described. The jury could reasonably infer from this evidence that the defendant had knowledge of the gun and also the power and intent to exercise control over it. *Id.* at 134-135. See *Commonwealth* v. *Gizicki,* 358 Mass. 291, 297 (1970); *Commonwealth* v. *Gray,* 5 Mass. App. Ct. 296, 298 (1977); *Commonwealth* v. *Alcantara,* 53 Mass. App. Ct. 591, 596-597 (2002).

2. *Admission of hearsay evidence.* After the parties had stipulated that the charges of being a fugitive from justice and being a fugitive from justice upon a court warrant would not be submitted to the jury, the judge specifically instructed the prosecutor not to elicit any testimony regarding any out-of-State warrants. Nevertheless, during her direct examination of Officer Carroll, the prosecutor elicited that the officer had stopped the SUV because of a report that it had been involved in an armed robbery earlier that same evening in Providence. More specifically, Officer Carroll testified as follows:

Q. "Okay. And where were you at approximately 2 A.M.?"

A. "At the corner of Prairie and Thurbers."

Q. "Okay. And what were you doing there?"

A. "We were actually on a vehicle stop at that time."

Q. "Okay. And what was the nature of that stop?"

A. "It was in relation to an armed robbery which had happened earlier in the evening."

Q. "Okay. And what streets did you say that this occurred on?"

A. "It was in Meni Court, which is a street off of Thurber Avenue."

Q. "Okay. And did you effectuate the stop of this vehicle?"

A. "Yes, ma'am, I did."

Q. "Okay. And can you describe the area where the vehicle was stopped?"

A. "Yes. It was a small dirt road which led into a parking lot behind an apartment complex."

Q. "And how was the vehicle stopped?"

A. "It was stopped in relation, like I said, to an armed robbery that had happened earlier."

Officer Lough similarly testified that he had gone to Officer Carroll's assistance because he (Officer Carroll) "had stopped a vehicle that was, I believe, wanted in connection with a robbery that had just occurred." Additionally, another Providence police officer, Captain John Ryan, testified that he had joined in the chase on Route 95 after he had monitored radio broadcasts "about a robbery . . . involving a white SUV" and "officers stopping what they believed to be the same white SUV."

The defendant contends that these several references by the officers to the SUV's possible involvement in an earlier armed robbery in Providence constituted inadmissible hearsay and, hence, should have been excluded from the evidence in this case. The defendant further contends that, even though there was no objection to the testimony, its admission created a substantial risk of a miscarriage of justice with respect to all his convictions, as well as the finding of responsible on the speeding charge. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

We agree with the defendant that the officers' testimony that the SUV was stopped because it was wanted in connection with an earlier armed robbery that had occurred in Providence should not have been admitted in evidence. While the Supreme Judicial Court has permitted the use of such testimony to explain the reasons for police action, it has also noted that such testimony "carries a high probability of misuse, because a witness may relate 'historical aspects of the case, replete with hearsay statements in the form of complaints and reports,' even when not necessary to show state of police knowledge." *Commonwealth* v. *Rosario,* 430 Mass. 505, 509 (1999), quoting from McCormick, Evidence § 249, at 734 (E. Cleary 3d ed. 1984). Accordingly, the court has held that such testimony is admissible only if it is based on the police officer's own knowledge, it is limited to the facts required to establish the officer's state of knowledge, and the police action or state of police knowledge is relevant to an issue in the case. *Commonwealth* v. *Rosario, supra* at 509-510.

Here, there was no issue as to why Officer Carroll had initially stopped the white SUV which the defendant was driving. Even if there had been such an issue, there is no apparent reason why Officer Carroll needed to refer specifically to "an armed robbery which had happened earlier in the evening," rather than state simply that he had received information causing him to be on the lookout for the SUV, or had received a dispatch requesting that he stop the SUV. There is also no apparent reason why the additional police witnesses needed to say anything at all about the reasons for the stop. These multiple references by the officers to the SUV's possible involvement in an earlier armed

robbery appear to have been irrelevant to any issue in the case and, hence, should not have been allowed in evidence. See *id.* at 509-510, and cases cited. See also *Commonwealth* v. *Parkes*, 53 Mass. App. Ct. 815, 817-21 (2002).

Nevertheless, in the circumstances of this case, we conclude that admission of the testimony did not create a substantial risk of a miscarriage of justice with respect to any of the defendant's convictions or the finding of responsible on the speeding charge. The Commonwealth's evidence was strong with respect to each of the charges against the defendant and included the testimony of several eyewitnesses with respect to the defendant's flight from the initial stop and then his attempted escape up Route 95. Moreover, the prosecutor made no reference to any of the offending testimony during her closing to the jury, but rather relied solely on the several witnesses' testimony as to what they had observed, and also the discovery of the gun in the backpack containing the defendant's paystub and work shirt. Finally, the defendant requested, and the judge gave, a strong curative instruction directing the jury to draw no inference from the testimony regarding the SUV's possible involvement in an earlier armed robbery. More specifically, the judge instructed the jury:

> "Now jurors, I want to stress once again, and I've mentioned this earlier that there's been some evidence that's come into the case with respect to actions that occurred in Rhode Island. You heard some testimony that the vehicle involved here, at one point, may have been considered a suspect vehicle for a robbery matter involved in Rhode Island. I am instructing you to disregard that testimony on the issue of guilt or innocence of the defendant on this case. There is no evidence before the court that this defendant was involved in any way in an armed robbery in Rhode Island. That evidence came in just to indicate to you the reason why the police were there, and initially stopped the vehicle. So I'm instructing you not to consider that as evidence against the defendant."

Given each of the circumstances we have previously described, we think that this instruction was adequate to avert any prejudice to the defendant from the references to the SUV's

possible involvement in an earlier armed robbery. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983); *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989); *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 343 (1994); *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 761 (1997). We therefore conclude that admission of the testimony did not give rise to a substantial risk of a miscarriage of justice. By so holding, however, we do not condone the prosecutor's eliciting the testimony. We caution prosecutors to properly prepare witnesses' testimony to avoid this type of error. We recognize that district court prosecutors may have little time to debrief and prepare their trial witnesses, particularly where, as here, such witnesses are employed in another state. Nonetheless, it is expected that a prosecutor who is aware that a police witness might allude to inadmissible prejudicial evidence will take affirmative steps to ensure that such testimony does not come before the jury.

3. *Other evidentiary issues*. The defendant also claims that the judge erred in admitting in evidence the actual gun discovered in the SUV, because the inventory search occurred in Rhode Island, rather than in Massachusetts, and, hence, he should have been prosecuted for the firearms charge in Rhode Island, rather than in Massachusetts. He also claims that the judge erred in admitting testimony by Detective Padessa regarding his discovery of a knife in the SUV, as well as testimony by Officer Carroll regarding shots being fired after the initial stop, since neither piece of testimony was relevant to any of the charges against the defendant.

We agree with the Commonwealth that, because the gun found in the SUV was the subject of the charge of unlawfully carrying a firearm in Massachusetts without a license, it was properly admitted in evidence. See, e.g., *Commonwealth* v. *Diaz*, 15 Mass. App. Ct. 469, 473 (1983) (real evidence is admissible, if relevant). It is irrelevant that the inventory search resulting in the discovery and seizure of the gun occurred in Rhode Island, rather than in Massachusetts. The defendant possessed the gun in Massachusetts and, hence, could properly be

prosecuted here for this crime.[3] See *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 671-672 (1974).

We also agree with the Commonwealth that the judge properly admitted Officer Carroll's testimony that, after initially stopping the SUV, he heard what he believed were gunshots coming from the vehicle, and so he took cover behind a parked minivan. Even though there was other evidence tending to show that the gunshots may have been fired by other Providence police officers, rather than by the occupants of the SUV, that goes to the weight, rather than the admissibility, of the testimony. See Liacos, Massachusetts Evidence § 4.1.2, at 109-110 (7th ed. 1999).

Finally, we note that the judge agreed with the defendant that testimony regarding the knife should not be admitted, and accordingly, the judge struck such testimony and specifically instructed the jury to disregard it. While the defendant complains (and the Commonwealth does not dispute) that the knife was included in a photograph of the contents or interior of the SUV which was introduced in evidence,[4] it has not been made to appear that the photograph by itself possibly could have resulted in any prejudice to the defendant in the circumstances of this case. See *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 229-230, cert. denied, 389 U.S. 916 (1967); *Commonwealth* v. *Toro,* 395 Mass. 354, 358-359 (1985).

*Judgments affirmed.*

*Finding of responsible affirmed.*

---

[3]We reject the defendant's assertion that, because the inventory search of the SUV and ensuing seizure of the gun occurred in Rhode Island, he was "left without recourse in Massachusetts to challenge the lawfulness of the Rhode Island inventory search." Even though the seizure of the gun occurred in Rhode Island, the defendant could have moved to suppress the gun if he believed that the seizure was unlawful. See *Commonwealth* v. *Federici,* 427 Mass. 740, 742-743 (1998).

[4]The defendant did not include any copy of the photograph in his record appendix.