**Harry E. WATERSTAAT, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 4843–4845.**

District of Columbia Court of Appeals.

Argued Dec. 3, 1968.

Decided April 25, 1969.

Joseph Paull, Washington, D. C., for appellant.

John D. Aldock, Asst. U.S. Atty, with whom David G. Bress, U.S. Atty., Frank Q. Nebeker and David G. Woll, Asst. U.S. Attys., were on the brief for appellee.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

Appellant was convicted by the court below sitting without a jury on informations charging him with attempted unauthorized use of a vehicle,[1] possession of a prohibited weapon (a stiletto knife),[2] and carrying a pistol without a license.[3] Appellant was sentenced to serve an indeterminate sentence under the provisions of the Federal Youth Corrections Act, 18 U.S.C. § 5010(b). He urges reversal of his convictions on the grounds that (1) the Government failed to prove at trial that the owner of the stolen automobile in which appellant was arrested had not given appellant permission to use that auto; (2) the Government did not prove beyond a reasonable doubt that appellant was carrying a pistol on or about his person within the meaning of the applicable statute; and, (3) the prohibited weapon of which he allegedly had possession was in fact non-operative.

■ At trial, police officer Leeper testified that he saw appellant driving a white 1962 Oldsmobile with a certain license number and that the auto was listed in his "stolen car" book. After confirming on his radio the fact that this was a stolen car, he arrested appellant. The Government then presented a Mrs. Reynolds who testified that her car, a white 1962 Oldsmobile, had been stolen from the street where she had left it locked. She reported the theft to the police precinct nearest her. Several days later, Officer Leeper telephoned her to come and get her automobile, which had been recovered. She had given no one permission to operate it.

Appellant contends that the Government did not connect the testimony of the arresting officer with that of the victim to prove that the automobile in which appellant was arrested was the same automobile stolen from Mrs. Reynolds. Appellant does not contend that he was the owner of the

auto he was driving or deny that ownership of that car was in a third party. We are of opinion that the evidence summarized above was sufficient to permit the trier of fact to find that the recovered auto belonged to Mrs. Reynolds and appellant did not have her permission to drive it. See Dickson v. United States, D.C.App., 226 A.2d 364 (1967); Wesley v. United States, D.C.App., 233 A.2d 514 (1967).

■ The evidence at trial on the charge against appellant of carrying a pistol without a license may be summarized as follows: At about two o'clock on a rainy morning police officers in an unmarked cruiser saw appellant sitting in a car 100 to 150 yards away from the entrance to a delicatessen which was the only store still open in that particular shopping center. In view of the hour, the weather and the distance of the car from the open store, the officers' suspicions were aroused and they approached and questioned appellant. He explained that he was waiting for a friend buying coffee to carry out from the delicatessen. The officers did not look into appellant's car during this conversation. Thereafter, they continued to keep appellant under surveillance and some minutes elapsed before someone rejoined appellant and they finally drove from the parking area. At this time the police stopped appellant's car and as one of the officers approached it on the right side, appellant's passenger "started fooling around with his left hand". The officer shone his light on the passenger's left hand and saw a pistol sitting on the car seat between appellant and the passenger. The pistol was loaded and in working order.

At trial, appellant denied ownership or knowledge of the pistol and the passenger testified the pistol had been his. This witness stated that the pistol had slipped out of his top-coat pocket when he had started to alight from the car in response

1. D.C.Code 1967, § 22–2204.

2. D.C.Code 1967, § 22–3214(b).

3. D.C.Code 1967, § 22–3204.

to the officer's command and that appellant did not know that he had had the pistol. The witness had earlier pleaded guilty to a charge of carrying a pistol without a license. Some discrepancies, which we need not detail, developed between the testimony of appellant and his witness on cross-examination by the prosecutor as to their movements earlier that night and why they had been together.

 The Government under the applicable statute is required to prove that the pistol was "in such proximity to * * * [appellant] as to be convenient of access and within reach". Brown v. United States, 58 App.D.C. 311, 30 F.2d 474 (1929); Wilson v. United States, 91 U.S. App.D.C. 135, 198 F.2d 299 (1952). The trial court was presented for determination an issue of fact whether the pistol had been lying on the front seat next to appellant within convenient access and reach of appellant so that he might be found to have had possession under the statute or whether the pistol fell out of the pocket of appellant's passenger and the police intervened before appellant could possibly have had access to it. We cannot say upon a review of all the testimony that his finding of guilt lacked substantial support from the evidence. The fact that appellant's passenger was convicted also of carrying a pistol without a license does not of course prevent the conviction of appellant for the same offense. Emburgh v. United States, D.C.Mun.App., 164 A.2d 342 (1960); United States v. Luciano, 343 F.2d 172, 174 (4th Cir. 1965).

Finally, appellant contends that his conviction for possession of a prohibited weapon, a "stiletto-type" knife, must fall because the knife in his possession was "an inoperable gravity knife". We need not reach this issue because appellant received

an indeterminate sentence under the Federal Youth Corrections Act on his remaining convictions which we are affirming. *See* Calhoun v. United States, 130 U.S. App.D.C. 266, 399 F.2d 999, 1,000 (1968); Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).[4] Accordingly, the judgments are

Affirmed.

4. Appellant calls our attention to a memorandum decision by the Supreme Court in Benton v. Maryland, 393 U.S. 994, 89 S.Ct. 481, 21 L.Ed.2d 460 (1968) which sets down for argument and decision the issue whether *Hirabayashi* should be re-examined and revised. We believe that we should not hold in abeyance our decision in this case until such time as the *Benton* case is reargued and decided upon the pure speculation that the *Hirabayashi* rule *might be* revised or cast aside.