578 A.2d 1161 (1990)
In re F.T.J., Appellant.
No. 89-435.
District of Columbia Court of Appeals.
Submitted May 24, 1990.
Decided August 14, 1990.
Lorenzo Randle, Washington, D.C., appointed by this court, was on the brief for appellant.
Charlotte M. Brookins, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.
Before FERREN, BELSON and FARRELL, Associate Judges.
PER CURIAM:
Appellant's sole challenge in this appeal is to the sufficiency of the evidence supporting his adjudication of delinquency based upon unlawful possession of a machine gun and ammunition. D.C.Code §§ 22-3214(a) and 6-2361 (1989). We affirm.
Appellant was the lone back-seat passenger in an automobile stopped by police after it was observed driving unlawfully with its high beams on and then through a red light. After appellant and the two front-seat occupants were removed from the car, the police found a loaded .30 caliber M-1 carbine semi-automatic riflea machine gunpartly concealed beneath the driver's seat behind which appellant had sat. Between six and nine inches of the gun, including the stock and the trigger, protruded out from behind the driver's seat. Also concealed under the driver's seat was a five shot .38 caliber revolver, and under the right front seat was a six shot .38 caliber revolver.
In adjudicating appellant delinquent on the basis of his possession of the machine gun, the trial judge made the following findings: (1) the machine gun was discovered sticking out toward the rear seat; (2) the interior dome light of the car was working, such that appellant at least would have seen the gun at his feet upon entering; (3) appellant was in the car for fifteen or twenty minutes and at some point "would have, virtually, kicked the machine gun"; (4) from the presence of three guns in the car it was fair to infer that one "was for each of the three people in the car"; and (5) since appellant, by his own account, had been shot in the stomach a month earlier,[1] he "had a motive to have some weapons on him." The court found, therefore, that appellant *1162 knew the gun was in the car, that it was "conveniently accessible" to him, and that he "intend[ed] to exercise dominion and control over it."
The government did not contend below, nor does it here, that there was evidence the machine gun had ever come into appellant's actual possession. Like the parties and the trial judge, therefore, we decide this case on the basis of whether the government offered sufficient proof of constructive possession.[2] Recently, in Bernard v. United States, 575 A.2d 1191 (D.C. 1990), the court stated that, to prove constructive possession of contraband (in that case narcotics):
it is not sufficient for the prosecution to show that appellants were within reach of the drugs; ... [r]ather, the government must establish that appellants knew of the location of the cocaine and that they exercised dominion and control over it. Specifically, the prosecution was required to prove that each appellant knowingly had both the power and the intention at a given time to exercise dominion or control over the cocaine.
575 A.2d at 1195 (citations omitted). The same principles apply to constructive possession of a weapon and ammunition. In re T.M., supra note 2, 577 A.2d at 1152.
In In re T.M., we reversed adjudications of delinquency for possession of a firearm and ammunition in a case in which the appellants, along with four others, were found in a bedroom positioned "roughly equidistant from the contraband when ... police burst into the apartment." Id. 577 A.2d at 1152. The trial judge made no finding "that either appellant had the intent to guide the destiny of the weapon or the live rounds." We concluded that
[a]lthough, like the other occupants of the room, [the appellants] were sufficiently close to the pistol and ammunition to enable the judge to conclude beyond a reasonable doubt that they knew that these items were there, and that they had the power to exercise dominion over them, the proof here will take the government no further than that.
Id. In finding insufficient proof that the appellants intended to exercise dominion or control over the weapon, we pointed out that there was no evidence that they "were more than comparatively short-term visitors to the" apartment (having no personal belongings or papers there), had any prior association with the other persons there, or were linked to an "ongoing criminal operation" being conducted there. Id. We held that, "[w]hen stripped to its essence, the case against these appellants consists of their proximity to a pistol and ammunition in plain view in a sordid crack house...." Significantly, for present purposes, we distinguished that situation from the one presented by the instant case, stating:
This is not a case such as Brown [v. United States, 546 A.2d 390, 396-97 (D.C.1988)], or Waterstaat v. United States, 252 A.2d 507, 509 (D.C.1969), in that the requisite inferences may be drawn from the location of weapons in plain view and substantially within a defendant's reach in the closer confines of an automobile.
Id. 577 A.2d at 1154 n. 12. By "requisite inferences" we meant not only access and knowledge but the intent to exercise dominion *1163 or control that was lacking in In re T.M.
Thus, In re T.M. provides no assistance to appellant. In essence that case merely applied a proposition already set forth in Brown v. United States, supra, 546 A.2d at 395 n. 3, that "[i]t is reasonable to expect the law to require a somewhat higher degree of proof where an apartment visitor is alleged to have possessed contraband located somewhere within the large space of an apartment, as opposed to that required for an automobile occupant who knows a pistol is within easy reach under or behind the seat." The gun in In re T.M. was not in the defendants' immediate proximity; indeed, the court noted that "there was at least one person between J.T.M. and the weapon," 577 A.2d at 1150. The court therefore did not foreclose the possibility that plain view and ready accessibility will yield the required intent to exercise dominion or control of contraband even in the confines of a room. We need not consider that hypothesis here, however, because our decisionsincluding In re T.M.leave no doubt that the requisite intent may be inferred from the presence of contraband in an automobile, in plain view, conveniently accessible to the defendant. See, in addition to Brown and Waterstaat, supra, Tucker v. United States, 421 A.2d 32, 35 (D.C.1980) (weapon found in plain view partially under armrest on seat next to where defendant had been seated moments before supported finding of constructive possession); Hamilton v. United States, 395 A.2d 24, 28 (D.C.1978) (gun found on seat next to defendant-passenger); Kenhan v. United States, 263 A.2d 253 (D.C.1970) (weapon found protruding from between back rest and seat to the left of where defendant-passenger had been seated). See also Johnson v. United States, 309 A.2d 497, 499 (D.C.1973) (evidence sufficient where defendant was passenger in rear seat of car and two pistols were found under passenger side of front seat), cert denied, 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974); Holley v. United States, 286 A.2d 222 (D.C.1972) (evidence sufficient where, though defendant was in right front seat and protruding pistol lay on opposite side of rear seat, when defendant "leaned over toward the back seat the gun was within her reach").
In the present case, the protruding end of the machine gun lay at appellant's feet unconcealed and so close to him thatas the trial judge observedhe "would have, virtually, kicked [it]" during the fifteen to twenty minutes he was in the car.[3] These facts, and the additional circumstances relied on by the trial judge, are sufficient to support his finding of constructive possession.
Affirmed.
NOTES
[1] Appellant testified that since he had had surgery for a gunshot performed on his stomach about a month earlier, he was physically unable to bend down and hence could not have inserted the gun beneath the seat. The trial judge implicitly rejected this defense.
[2] In In re T.M., No. 88-887, 577 A.2d 1149 (D.C. July 16, 1990), this court recently quoted Judge Tamm's observation that, "The more cases one reads on constructive possession, the deeper is he plunged into a thicket of subjectivity." 577 A.2d at 1151 n. 4, quoting United States v. Holland, 144 U.S.App.D.C. 225, 227, 445 F.2d 701, 703 (1971) (Tamm, J., concurring). One might similarly note that there are casesof which the present one may be an examplewhere the distinction between actual possession and constructive possession is, to say the least, elusive. Compare, e.g., United States v. Hubbard, 429 A.2d 1334, 1338 (D.C.) ("actual possession" means "the ability of a person to knowingly exercise direct physical custody or control over the property in question"), cert. denied, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); United States v. Spears, 145 U.S.App.D.C. 284, 293, 449 F.2d 946, 955 (1971) (words "immediate actual possession," for purposes of robbery statute, mean "an area within which the victim could reasonably be expected to exercise some physical control"), with United States v. Holland, supra ("constructive possession means being in a position to exercise dominion or control over a thing").
[3] Moreover, the manner in which the gun protruded from beneath the seatwith the stock end and trigger to the rearsuggested that it had been inserted under the seat from the direction of the rear seat occupied by appellant.