142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Keisha N. ARMSTRONG, Defendant-Appellant.
 No. 97-3686.
 United States Court of Appeals, Seventh Circuit.
 Argued April 29, 1998.
Decided May 27, 1998.
 
 On Appeal from the United States District Court for the Southern District of Illinois. No. 3:96CR30082-004. Paul E. Riley, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Keisha Armstrong was charged with one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and with one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846. The government dismissed the second count and Armstrong was convicted by a jury of the possession count. She was sentenced to 63 months' imprisonment and four years' supervised release. Armstrong contends that the evidence was insufficient to convict her of possession with intent to distribute marijuana and that the district court erred in denying her post-trial motion to have the marijuana reweighed. We affirm.
 
 
 2
 On July 22, 1996, the van in which Armstrong was riding was pulled over by an Illinois state trooper for speeding. Armstrong was seated behind the passenger seat. The van was being driven by Cynthia Joiner, but was owned by Angela Lloyd, who was riding in the back "captain's chair" next to Armstrong. The trooper obtained Lloyd's consent to search the van. Upon opening the rear door of the van, the trooper found two large green suitcases in the cargo area. He opened one suitcase and found several bundles of what appeared to be marijuana wrapped in duct tape. The four women in the van were arrested and were taken to state police headquarters. At the headquarters, the rest of the van was searched. The police found the following: a second green suitcase filled with bundles of suspected marijuana; a black suitcase and a black duffel bag on the rear bench seat containing bundles of suspected marijuana; a white plastic bag on the floorboard behind the driver's seat which also contained two bundles of suspected marijuana; and another white plastic bag behind the seat in which Armstrong was sitting containing one bundle of suspected marijuana. Four of the bundles were marked "Cliff." Some clothing and other personal items were also found in the car.
 
 
 3
 When she arrived at the Illinois State Police Headquarters, Armstrong was searched. The police found a birth certificate for her son, Clifton Everald Grant, Jr. Armstrong told authorities that the father of the child was her boyfriend, Clifton Everald Grant, Angela Lloyd's brother. Special Agent Caswell Dawson then interrogated Armstrong. Dawson testified at Armstrong's trial that he took a statement from Armstrong, wrote it down, and had her read and verify it. The statement indicated that she had left Philadelphia because she "was having some problems" there. The statement further indicated that she had been in California for four or five days and then met up with the other three women who had been in the van to go to a party. When she told them that she was returning to Philadelphia, the three women stated that she should go with them because they were "going that way." The statement indicates that the four women left the next day and stopped only for food and gas, except for one stop in Houston. At that stop, the statement indicates that Lloyd said a few words to two men who loaded several suitcases into the van. They left and later that day were pulled over by the police.
 
 
 4
 After Dawson took this statement, he testified that he spoke to the officers who were questioning the other women. He returned to the interview room and told Armstrong that her story was not consistent with that told by the others. He testified that she admitted that she was lying and asked to write her own statement. The only substantive difference in the second statement is that Armstrong stated that she and Angela Lloyd had driven from Philadelphia on Tuesday, July 16, 1996, and that she had not met up with Lloyd in California.
 
 
 5
 At trial, Armstrong testified that in fact she had given three statements to Dawson, the first of which she had written on her own, but that Dawson ultimately tore it up because he accused her of lying. She also acknowledged that the women had never stopped in Houston but that she felt compelled to say they had based on the other women's statements that Dawson showed to her. She stated that she was surprised that they were leaving so soon because she thought it was going to be a vacation. Armstrong testified that on the way out of Los Angeles, the group stopped at the airport. The women dropped off Lloyd's brother, Radcliff, another man Armstrong did not know, and Armstrong's son for a flight back to Philadelphia. Armstrong also testified that on the return to Philadelphia there were several pieces of luggage in the van that had not been there before but that she did not know what they contained and did not ask.
 
 
 6
 We first address Armstrong's sufficiency of the evidence claim. In addressing a claim for the sufficiency of the evidence, this court reviews the evidence in a light most favorable to the government and will sustain the conviction so long as any reasonable trier of fact could have concluded that the essential elements of the crime were established. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "An appellate court will overturn the verdict only if the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United States v. Granados, No. 97-1900, 1998 WL 195957, at * 2 (7th Cir. April 24, 1998).. Defendants challenging the sufficiency of the evidence at trial face "a nearly insurmountable hurdle." United States v. Moore, 115 F.3d 1348, 1363 (7th Cir.1997). In order to prove possession with intent to distribute, the government must show that the defendant knowingly or intentionally possessed marijuana with the intent to distribute it and knew that the substance was a controlled substance. United States v. Covarrubias, 65 F.3d 1362, 1369 (7th Cir.1995).
 
 
 7
 Armstrong argues that the government failed to establish possession because she was not aware of what the suitcases or plastic bags contained, did not own the van, and testified that she had not driven the van during any portion of the trip. Further, Armstrong testified that she was not well-acquainted with Lloyd, the owner of the van, the driver, Cynthia Joiner, or the other passenger, Caryl White. The government asserts that it presented sufficient evidence to establish possession. Although not overwhelming, the evidence is sufficient such that a rational trier of fact could have found Armstrong guilty of possession with intent to distribute.
 
 
 8
 Possession may be actual or constructive. Covarrubias, 65 F.3d at 1369. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Kitchen, 57 F.3d 516, 520 (7th Cir.1995) (quoting United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir.1990)). "[M]ere proximity to the drug[s], mere presence on the property where [the drugs are] located, or mere association ... with the person who does control the drug[s] or the property on which [they are] found, is insufficient to support a finding of possession." United States v. Windom, 19 F.3d 1190, 1200 (7th Cir.1994) (citation omitted). "Possession, including constructive possession, implies a right--not necessarily a legal right, but a right recognized by the relevant community, which may be an illegal community--to control." United States v. Ortega, 44 F.3d 505, 507 (7th Cir.1995).
 
 
 9
 Armstrong drove from Philadelphia to Los Angeles, essentially non-stop, with two women she admittedly hardly knew and three children. In addition to those passengers in the van, a second car driven by Lloyd's brother, Radcliff, traveled behind them in another car from Philadelphia to Los Angeles. Armstrong testified that they stopped only to eat and get gas and that they slept in the car. Armstrong believed that Lloyd was a nurse's aide but did not know where she worked or why she traveled between Philadelphia and Florida. The women were in Los Angeles, a "source city," for one day when Lloyd told her that they were driving back to Philadelphia that day with two other women whom she did not know well. The car was loaded with suitcases and bags containing over $250,000 worth of marijuana, but Armstrong stated she was unaware of the contents and did not ask about it. Armstrong also was carrying a driver's license under someone else's name. Further, the stories given by Armstrong and the three other women were inconsistent, and Armstrong admits having lied in her statements to the police. Armstrong testified that the father of her son was named Clifton, and several packages of the marijuana that were found in the van were marked with the word "Cliff." Although Armstrong testified that her boyfriend, Clifton's, nickname was "BB," the jury could have inferred that the marijuana bricks marked "Cliff" were for Armstrong's boyfriend. An expert witness testified that large amounts of marijuana are usually transported by personal vehicle and that couriers generally know that they are transporting illegal substances. Finally, the jury heard testimony from Armstrong that she had turned her infant son over to Lloyd's brother (and the baby's uncle), Radcliff, to fly back from Los Angeles to Philadelphia while she rode in the van. She testified that she did not know Radcliff well and did not like him, and that she also did not know the man with whom Radcliff was traveling. Such behavior indicates that she may have had a significant interest in the van (or its contents). Under these circumstances, we cannot conclude that there was no evidence from which a rational jury could have found Armstrong guilty of possession with intent to distribute marijuana. See United States v. Thompson, 106 F.3d 794, 799-800 (7th Cir.1997) (concluding that the following evidence was sufficient to find passenger guilty of possession of marijuana with intent to distribute: the defendants spent three days in a closed truck with an overpowering smell of deodorizer; the driver had packed little clothing although she stated that she was moving to New York; the furniture they were moving appeared recently to have been purchased at a thrift shop; and the defendants' stories as to where they were going and why were not the same); see also Covarrubias, 65 F.3d at 1369-70; United States v. Ferguson, 935 F.2d 1518, 1526 (7th Cir.1991).
 
 
 10
 Armstrong also argues that the district court erred in denying her post-trial motion to reweigh and define the seized marijuana. When seized, the twenty-three bricks of marijuana were weighed at 281 pounds. The Illinois State Police crime laboratory subsequently weighed only the marijuana, without the packaging, and determined the weight to be approximately 115 kilograms, or 254 pounds. See R. 155, Exhibit A-1. Prior to trial, the parties stipulated that the weight of the seized marijuana was approximately 115 kilograms. The jury was instructed that the stipulation should be construed as fact, and the district court used this amount in calculating Armstrong's sentence.
 
 
 11
 Armstrong asserts that the government did not account for the moisture content of the marijuana and did not separate the usable amount from the unusable amount in determining the appropriate weight. See U.S.S.G. § 2D1.1, comment. (n.1) (stating that for marijuana in which the moisture content renders the marijuana inconsumable without further drying, as in rainsoaked or freshly harvested marijuana, the weight absent the moisture is to be estimated). According to the affidavit of Ed Rosenthal, a founder of "High Times" magazine, "if the marijuana were weighed correctly more than 7 1/2% or 15 kilograms of material would be deducted from the total amount and the weight would fall below 100 kilograms," thus reducing Armstrong's base offense level and excluding her from the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(b).
 
 
 12
 The government's evidence regarding the quantity of drugs must possess sufficient indicia of reliability. United States v. Atkinson, 15 F.3d 715, 720 (7th Cir.1994). Section 2D1.1 requires that the base offense level be calculated on the "entire weight of any mixture or substance containing a detectable amount of the controlled substance." See U.S.S.G. § 2D1.1(c), Note (A). Such mixture or substance does not include "materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1, Application Note (1). However, the examples provided by the Guidelines include separating the fiberglass from a cocaine/fiberglass bonded suitcase and beeswax from a cocaine/beeswax statue, see id., and are inapplicable here. Armstrong was charged with and convicted of possessing with intent to distribute consumable marijuana, and she stipulated to the weight of the marijuana prior to trial. Sufficient indicia of reliability regarding the weight of the marijuana existed in the report from the Illinois State Police crime lab and the parties' subsequent stipulation. The district court was entitled to rely on the Presentence Investigation Report's calculation of Armstrong's base offense level using the 115 kilograms contained in the laboratory report and the stipulation. See United States v. Taylor, 72 F.3d 533, 543 (7th Cir.1995).
 
 
 13
 AFFIRMED.