**Baltazar RIVAS, Appellant,**

v.

**UNITED STATES, Appellee,**

and

**Jose M. Melgar, Appellant,**

v.

**United States, Appellee.**

**Nos. 97–CF–304, 97–CF–416.**

District of Columbia Court of Appeals.

Argued Jan. 21, 1999.
Decided Aug. 12, 1999.

Tamara A. Shockley, Washington, for appellant Baltazar Rivas.

Nathan I. Silver, Washington, for appellant Jose M. Melgar.

Stefanie F. Roemer, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

SCHWELB, Associate J.

Baltazar Rivas and Jose M. Melgar were convicted by a jury of possession of cocaine with intent to distribute it (PWID), in violation of D.C.Code § 33–541(a) (1998). On appeal, they challenge a number of rulings by the trial judge. Perceiving no reversible error, we affirm.

## I.

On February 11, 1996, at approximately 1:00 a.m., officers of the United States Secret Service observed a car which was stopped in the middle of a two-lane street and blocking traffic. Melgar was in the driver's seat, while Rivas was the front seat passenger. Two other men were in the rear seat.

After the car moved to the side of the road, the officers issued a citation to Melgar. While doing so, they observed an open, forty-ounce container of alcohol inside the vehicle.[1] When one of the officers leaned into the car to retrieve the open container, he observed two clear sandwich bags in the front console, between the emergency brake and the passenger seat. One of the bags contained twelve rocks of crack cocaine; the other bag contained six rocks. Officers also recovered $236 in cash from Melgar's person. Both defendants were arrested and ultimately convicted of PWID.[2]

## II.

Both defendants filed pretrial motions to suppress the cocaine which police recovered from the car. The trial judge denied the motions, concluding that the vehicle

---

1. See D.C.Code § 25–128(a) (1996) ("no person shall in the District of Columbia ... possess in an open container any alcoholic beverage in any street ... or in any vehicle in or upon the same").

2. At the trial, Melgar testified on his own behalf. He denied knowledge of the drugs, and he claimed that the cash recovered from him represented his wages. Rivas did not take the stand. The rear seat passengers were detained, but they were not prosecuted. Neither rear seat passenger was called as a witness by the prosecution or by either defendant.

was properly stopped for a traffic violation, that the open container of alcohol was in plain view, and that the officers properly recovered the cocaine, which was visible to the naked eye.[3] The judge held that after the contents of the sandwich bag had tested positive for cocaine, the officers had probable cause to search Melgar, and that the cash recovered from Melgar was therefore lawfully seized.

■ The appellants now challenge the judge's ruling, claiming primarily that the stop of the car was "pretextual." There is ample support for the judge's finding that Melgar had violated traffic regulations and that the open container was in plain view. There was no evidence that the traffic stop was pretextual;[4] even if it had been, the officers' subjective motivation is irrelevant. *Whren v. United States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Accordingly, we conclude that the motions to suppress were properly denied.

## III.

■ Rivas claims that the evidence was insufficient as a matter of law to show that he constructively possessed the cocaine. He therefore contends that the trial judge erred in denying his motion for judgment of acquittal. Although Rivas' position is not implausible in principle, it is foreclosed by binding precedent in this court.

■ In order to establish constructive possession, the prosecution was required to prove that Rivas knew of the location of the cocaine and that he had both the power and the intention to exercise dominion or control over it. *See, e.g., In re M.I.W.,*

667 A.2d 573, 575 (D.C.1995); *Bernard v. United States,* 575 A.2d 1191, 1195 (D.C. 1990). Viewing the evidence in the light most favorable to the prosecution, *see M.I.W., supra,* 667 A.2d at 575, an impartial jury could rationally find, beyond a reasonable doubt, that Rivas knew of the location of the cocaine. *See, e.g., Kenhan v. United States,* 263 A.2d 253, 254 (D.C. 1970); *Hamilton v. United States,* 395 A.2d 24, 28–29 (D.C.1978).[5]

The question whether the prosecution proved Rivas' intention to guide the destiny of the drugs is more difficult, for there was no evidence as to how long Rivas had been in the vehicle. But "our decisions ... leave no doubt that the requisite intent may be inferred from the presence of contraband in an automobile, in plain view, conveniently accessible to the defendant." *In re F.T.J.,* 578 A.2d 1161, 1163 (D.C. 1990) (per curiam); *see also Burnette v. United States,* 600 A.2d 1082, 1083 (D.C. 1991) (per curiam); *In re M.I.W., supra,* 667 A.2d at 577. We conclude that the evidence against Rivas readily satisfies this standard. *See also County Court of Ulster County v. Allen,* 442 U.S. 140, 164–66 & n. 27, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (sustaining legislative presumption that occupants of an automobile are aware of, and culpably involved in, possession of substantial amounts of narcotics which are abandoned or secreted in the vehicle); *People v. Leyva,* 38 N.Y.2d 160, 379 N.Y.S.2d 30, 341 N.E.2d 546, 550 (1975) ("[w]e do not believe that persons transporting dealership quantities of contraband are likely to go driving around with

---

3. One of the officers shone his flashlight into the car, so that the discovery of the cocaine was not inadvertent. Inadvertence, however, is no longer a necessary condition for application of the "plain view" doctrine. *Horton v. California,* 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

4. The appellants claim that the officers did not approach the vehicle until after it was no longer blocking the street. Even if we assume this version of the sequence of events to

be accurate, it would hardly prove pretextuality.

5. In both *Kenhan* and *Hamilton,* the inference of knowledge was far weaker than in this case, but both defendants' convictions were affirmed. At the time of these decisions, however, this court had not held, at least explicitly, that to establish constructive possession, the prosecution was required to prove the defendant's intent to exercise dominion or control over the contraband.

innocent friends or that they are likely to pick up strangers") (citation omitted);[6] *but cf. Commonwealth v. Deagle,* 10 Mass.App.Ct. 563, 409 N.E.2d 1347, 1351 (1980) (although rear seat passenger knew that PCP was in the car and that driver was smoking it, court was "of the opinion that some additional evidence beyond that showing mere knowledge is necessary to make out a case that possession of the bag was shared by the defendant"); *Crisman v. Commonwealth,* 197 Va. 17, 87 S.E.2d 796 (1955).

Given the force of our language in *In re F.T.J.*—"our decisions ... leave no doubt"—and in light of the authorities that have preceded and followed that decision, we believe that, notwithstanding the inevitable existence of factual distinctions between different cases,[7] the legal standard articulated in *F.T.J.* has become "embedded in the warp and woof of our law." *In re A.R.,* 679 A.2d 470, 475 (D.C.1996). In our view, a division of this court therefore is not free to depart from *F.T.J.'s* standard. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). The issues raised by Judge Ruiz may, of course, be addressed by the court sitting en banc, should the full court choose to grant a petition for rehearing en banc in this case or in a comparable one.[8]

## IV.

Melgar does not challenge the sufficiency of the evidence that he constructively possessed the contraband.[9] He claims, however, that the prosecution failed to prove beyond a reasonable doubt that he specifically intended to distribute the cocaine.

■ According to the prosecution's expert witness, the eighteen rocks of crack cocaine recovered from Melgar's car weighed 1.92 grams and had a combined street value of approximately $360. A substantial amount of cash was recovered from Melgar. The expert testified that the cocaine was sufficient for 192 "uses." We conclude that, viewed in the light most favorable to the prosecution, the evidence was sufficient to establish Melgar's intent to distribute. *See, e.g., Shorter v. United States,* 506 A.2d 1133, 1135 (D.C.1986); *Chambers v. United States,* 564 A.2d 26, 31

6. In *Leyva,* the court was applying New York's statutory presumption. If a legislature may indulge such a presumption, however, it should not be unreasonable for an impartial jury to draw a similar inference.

7. In *F.T.J.,* there were three occupants of an automobile, and the police recovered a machine gun and two handguns in the vehicle. This arguably permitted the inference that each occupant was associated with one weapon. Nevertheless, the *"ratio decidendi,"* or basis for the decision, is set forth in the language which we have quoted.

8. In addition to the authorities cited above, there is a good deal of relevant case law in other jurisdictions, as well as scholarly commentary, on the general issue presented by Rivas' appeal. The decisions point in various directions, but we have found no case directly in point. *See generally,* Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Automobile of which Defendant was not Sole Occupant,* 57 A.L.R.3d 1319, 1331–35 (1974 & Supp.1998) (collecting cases); 1 GERALD F. UELMEN & VICTOR G.

HADDOX, DRUG ABUSE AND THE LAW SOURCEBOOK § 6.3, at 6.22–6.26 (1998); F. LEE BAILEY & HENRY B. ROTHBLATT, HANDLING NARCOTIC AND DRUG CASES § 59, at 49–50 (1972 & Supp. 1998); *cf.* Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not,* 58 U. VA. L. REV. 751, 765–66 (1972) (suggesting "new approach" to constructive possession and arguing, as does Judge Ruiz, that "the doctrine of constructive possession effectively imposes liability for being present at a place where drugs are being used," and that "judicial use of a general possession statute to assert the broader liability usurps the legislature's proper function").

9. Because Melgar was the owner of the car, *see, e.g., In re M.I.W., supra,* 667 A.2d at 577, because the jury could reasonably conclude that Melgar gave false exculpatory testimony, *see Irick v. United States,* 565 A.2d 26, 30 n. 8 (D.C.1989), and because Melgar was carrying a large amount of cash, *see* authorities cited in text, *infra,* the evidence of constructive possession against Melgar was stronger than that against Rivas.

(D.C.1989); *Bernard, supra,* 575 A.2d at 1196 n. 7.

*Affirmed.*

FARRELL, Associate J., concurring.

For the reasons Judge Schwelb states, I agree that our prior decisions allowed the jury fairly to conclude that appellants, including Rivas, had constructive possession of the drugs. Those decisions treat the combined facts of presence in a car (as distinct from a room, a plane, or a train) and immediate proximity to contraband in plain view as enough to prove shared possession, if unexplained to the jury's satisfaction. I do not pretend that this proposition is unarguable. Perhaps, especially in today's culture, the fact that a passenger has taken no steps to distance himself from drugs visibly meant for sale lying inches from him in a car driven by a friend says nothing, or too little, about whether he personally has "some stake in [the drugs], some power over them." *United States v. Pardo,* 204 U.S.App. D.C. 263, 277, 636 F.2d 535, 549 (1980).[1] Maybe, too, the unlikelihood that someone openly transporting drugs for sale would pick up an innocent friend or stranger, *People v. Leyva,* 38 N.Y.2d 160, 379 N.Y.S.2d 30, 341 N.E.2d 546, 550 (1975), is not enough to prove—beyond a reasonable doubt—that the passenger has a "substantial voice vis-a-vis the drug[s]." *United States v. Staten,* 189 U.S.App. D.C. 100, 106, 581 F.2d 878, 884 (1978). But, as Judge Schwelb points out, the fact that at least one legislature has found these facts sufficient to create a rebuttable presumption of shared possession, which the Supreme Court in turn has sustained, *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), provides substantial support for the reasonableness of letting a jury draw that inference as well when offered no other explanation for the defendant's knowing presence. Indeed, in *Ulster County,* after rejecting the respondent-defendants' argument that they could not have shared possession because the prohibited guns were in a co-defendant's pocketbook (rather than on the console equidistant between driver and passenger, as in our case), the Supreme Court analyzed the case in terms relevant here:

> [T]he case is tantamount to one in which the guns were lying on the floor or the seat of the car in the plain view of the three other occupants of the automobile. In such a case, it is surely rational to infer that each of the respondents was fully aware of the presence of the guns and had both the ability and the intent to exercise dominion and control over the weapons.

*Id.* at 164–65, 99 S.Ct. 2213. Judge Ruiz's suggestion, *post,* that by allowing this inference without a *statutory* presumption we usurp the legislature's role is strained: the legislature has not defined "possession," much less "constructive" possession, but instead has incorporated the common law definition of those terms developed by the courts.

What suffices for constructive possession has long bedeviled judges and, no doubt, juries. *See, e.g., United States v. Holland,* 144 U.S.App. D.C. 225, 227, 445 F.2d 701, 703 (1971) (Tamm, J. concurring) ("The more cases one reads on constructive possession the deeper is he plunged into a thicket of subjectivity."). The rule of our cases that we apply here, like the statutory inference upheld in *Ulster County,* is an effort to objectify the standard as well as provide clear notice that the defense "they weren't *on* me, so they weren't mine" does not work in the narrow confines of an automobile, a prime facilitator of drug trafficking. Before discarding that rule, we should be sure we are not leaving in its place the haphazard regime of deci-

---

1. Certainly whether Rivas *knew* the drugs were next to him was a jury question, even though the police discovered them using a flashlight. Moreover, when Rivas stepped out of the car to talk to someone, he left the door open, reasonably indicating that he intended to re-enter the car and so was more than a momentary or "casual" occupant.

sionmaking Judge Tamm decried in which defense attorneys and prosecutors "present their cases with unfortunate knowledge that the law of constructive possession is what we will say it is in our next opinion." *Id.* at 227, 445 F.2d at 704.

RUIZ, Associate J., concurring.

I am constrained to agree that the evidence was sufficient to convict Rivas, the front-seat passenger, of the offense of possession with intent to distribute, based on a theory of constructive possession.[1] I reach that conclusion reluctantly, because the only evidence upon which the government relied to implicate Rivas is that he had been seated in the front passenger seat next to a center console upon which the police discovered two ziplock bags of cocaine while Rivas was outside of the car speaking to an acquaintance on the sidewalk several feet away from the car. There was no evidence presented on the length of time that Rivas had been in the car or whether Rivas was engaged in an ongoing drug venture with Melgar, the driver, or with the two passengers in the backseat.[2] The fact that the drugs were close enough to Rivas to have been in his plain view and accessible to him is sufficient to establish the first two elements of constructive possession—knowledge of the drugs and the ability to exercise control over them. *See Brown v. United States,* 546 A.2d 390, 394–95 (D.C.1988). Language in our cases unequivocally states that the same evidence of proximity of contraband in plain view also is sufficient to establish the third element necessary to a showing of constructive possession—that Rivas in some way controlled or had the intent to exercise control over the drugs. *See Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990) (citing *Brown, supra,* 546 A.2d at 394 n. 2) (explaining that to establish constructive possession, the

government must prove that the appellant "knowingly had both the power and the intention at a given time to exercise dominion or control"); *In re T.M.,* 577 A.2d 1149, 1151 (D.C.1990) (same).

Although we have, as the majority notes, *said* that intent to exercise dominion and control "may be inferred from the presence of contraband in an automobile, in plain view, conveniently accessible to the defendant," *see Burnette v. United States,* 600 A.2d 1082, 1083 (D.C.1991) (per curiam), I question whether that statement either makes sense or is supported by a close reading of our cases. First, the cases in which we have concluded that the evidence is sufficient to establish constructive possession have had additional facts supporting that the defendant had the requisite intent. *See Parker v. United States,* 601 A.2d 45 (D.C.1991) (concluding evidence sufficient for constructive possession where evidence showed that "narcotics-laden" bag rested in plain view on front seat of car equidistant from appellants and appellants were involved in ongoing criminal activity); *In re F.T.J.,* 578 A.2d 1161 (D.C. 1990) (per curiam) (concluding evidence sufficient to establish constructive possession of gun where appellant had been in car 15–20 minutes, there were three guns and three occupants in car, appellant had motive to possess gun, and manner in which gun protruded from under seat suggested it had been placed there from where appellant was seated); *Tucker v. United States,* 421 A.2d 32 (D.C.1980) (per curiam) (concluding evidence sufficient to support constructive possession where pistol protruded from under armrest in front seat next to where appellant had been sitting and appellant was seen in possession of the gun three days before arrest); *Holley v. United States,* 286 A.2d 222 (D.C.1972) (concluding evidence sufficient for constructive possession where gun was

---

1. I also agree with the majority that the evidence was sufficient to convict Melgar, the driver and owner of the vehicle, and that the suppression motions were properly denied.

2. At oral argument, counsel for Rivas represented that Rivas had just gotten into the car after he was offered a ride.

found on rear seat of car, only partially covered by a coat and within appellant's reach from right front seat, and, when asked to leave vehicle, appellant lunged for coat). *But see Hamilton v. United States,* 395 A.2d 24 (D.C.1978) (concluding evidence sufficient to support finding of constructive possession where gun was found wedged between passenger seat and door and appellant had been sitting in passenger seat when vehicle was stopped); *Kenhan v. United States,* 263 A.2d 253 (D.C. 1970) (concluding evidence sufficient for constructive possession where butt of gun stuck out from between backrest and passenger seat to the left of where appellant had been sitting when the vehicle was stopped); *Waterstaat v. United States,* 252 A.2d 507 (D.C.1969) (concluding evidence sufficient to support constructive possession where gun was found on front seat between appellant driver and passenger).[3]

A review of our cases therefore shows that the holdings in *Bernard* and *In re T.M.,* that intent to exercise dominion and control is a necessary element of constructive possession, is supported by most of our cases; but that the statements in *Burnette* and *In re F.T.J.,* that the requisite element of intent may be satisfied by proof of presence of contraband in plain view in proximity to the defendant, appear to go beyond the facts of our decided cases on the issue, including the facts in *Burnette* and *In re F.T.J.* themselves. Thus, the cases that comprise our jurisprudence in this area suggest that the evidence in this case was less than we have deemed sufficient in the past for constructive possession.

There is serious doubt about the merits of permitting an inference—sufficient without more—of an individual's intent to exercise dominion and control over contraband from the sole facts of that contraband's presence in plain view and accessibility to an individual. The starting point must be the reason for the intent requirement. Here, unfortunately, our cases do not shed much light. Traditionally, constructive possession had been defined as: a) knowledge of the presence of contraband; and b) the ability to exercise dominion and control over the contraband. *See Brown, supra,* 546 A.2d at 394; *Tucker, supra,* 421 A.2d at 35 ("To prove constructive possession, evidence must be adduced establishing that the [contraband] was conveniently accessible to appellant and that he knew of its presence.") (citations omitted). In 1990, the *Bernard* and *In re T.M.* cases firmly established the intent element of the constructive possession test as part of our jurisprudence;[4] however,

---

**3.** *Hamilton, Kenhan* and *Waterstaat* were decided twelve to twenty-one years before we expressly set out the third "intent" prong for constructive possession in *Bernard. See infra.* The *Hamilton* court relied mainly on the element of accessibility to find constructive possession rather than the element of intent. Likewise, in *Kenhan,* the court addressed only the element of knowledge of the presence of contraband, not intent to possess it. And, in *Waterstaat,* the court focused on knowledge and accessibility, not intent. Moreover, in none of these cases was intent explicitly inferred from plain view and proximity.

**4.** A number of other jurisdictions require intent as an element of constructive possession. *See United States v. Armstrong,* 1998 WL 278413, *3, 1998 U.S.App. LEXIS 10774, *3 (7th Cir.1998) (describing constructive possession as " 'knowingly ha[ving] the power and the intention at a given time to exercise dominion and control over an object, either directly or through others' ") (citation omitted); *United States v. Hastings,* 918 F.2d 369, 373 (2d Cir.1990) (defining constructive possession as " 'knowingly having the power to and the intention at a given time to exercise dominion and control over an object, either directly or through others' ") (citation omitted); *Palmer v. State,* 593 So.2d 143, 145 (Ala.Crim.App.1991) (requiring proof of 1) actual or physical control; 2) intent to exercise dominion and control; and 3) external manifestations of intent and control over contraband) (citations omitted); *McNulty v. State,* 655 A.2d 1214, 1217 (Del.1995) (outlining elements of constructive possession as 1) knowledge of the contraband; 2) ability to exercise dominion and control over contraband; and 3) intent to guide its destiny); *People v. McNeely,* 99 Ill.App.3d 1021, 55 Ill.Dec. 321, 426 N.E.2d 296, 298 (1981) (noting that constructive possession is present when defendant has intent and capability to maintain

neither case dealt with contraband located in a vehicle.[5] In *In re T.M.*, this court recognized the distinction, stating "[t]his is not a case such as *Brown, supra,* 546 A.2d at 396–97, or *Waterstaat, supra,* 252 A.2d at 509, in which it was held that the requisite inferences may be drawn from the location of weapons in plain view and substantially within a defendant's reach in the closer confines of an automobile." 577 A.2d at 1154 n. 12. In *Brown* and *Waterstaat,* however, it is clear that the "requisite inferences" referred to were the traditional elements of knowledge and accessibility, rather than intent. *See Brown, supra,* 546 A.2d at 396 (holding that evidence of proximity is sufficient to permit jury to infer convenient access); *Waterstaat, supra,* 252 A.2d at 509 (inferring knowledge from fact that gun was in plain view and accessibility from trial court's determination that gun was in close proximity to appellant). Nonetheless, in *In re F.T.J., supra,* the first case involving a vehicle following our explicit requirement of the intent prong in *Bernard,* this court extended the "requisite inferences" analysis to include intent. *See* 578 A.2d at 1162–63 ("[b]y 'requisite

inferences' we meant not only access and knowledge but the *intent* to exercise dominion or control") (emphasis added); *see also Speight v. United States,* 599 A.2d 794, 796 (D.C.1991) (citing *In re T.M., supra,* 577 A.2d at 1151 n. 5) (noting that to prove constructive possession, the government must show: "(1) that appellant knew of the location of the drugs; (2) that he had the ability to exercise dominion and control over them; and, (3) that he intended to guide their destiny"). While intent may have been an underlying element in the line of cases culminating in *Bernard,*[6] the *In re F.T.J.* court applied the "requisite inferences" language to the recently recognized intent prong largely without discussion, based, apparently, on consideration of the "closer confines of an automobile." [7]

Bearing in mind that the intent requirement was *added* to the traditional requirements of knowledge and accessibility of contraband, it is immediately questionable whether permitting an inference of intent from the *same* facts that establish knowledge and accessibility guts the imposition

---

control and possession of the contraband, and is aware of presence of contraband); *Person v. State,* 661 N.E.2d 587, 589 (Ind.Ct.App. 1996) (finding constructive possession when defendant has intent and capability to maintain dominion and control over contraband); *Commonwealth v. Spencer,* 423 Pa.Super. 353, 621 A.2d 153, 155 (1993) (defining constructive possession as " 'the power to control the contraband and the intent to exercise that control' ") (citation omitted); *State v. Reyes,* 671 A.2d 1236, 1238 (R.I.1996) (noting that constructive possession is established by showing that accused knew of presence of contraband and had intent to exercise control over it); *State v. Layman,* 953 P.2d 782, 787 (Utah Ct.App.1998) (requiring nexus between accused and contraband sufficient to allow inference that accused had both ability and intent to exercise dominion and control over contraband).

**5.** The *Bernard* case dealt with drugs found outdoors, while *In re T.M.* addressed guns located in an apartment.

**6.** *See Brown, supra,* 546 A.2d at 394 n. 2 (referring to trial court's jury instruction de-

scribing constructive possession as "knowingly ha[ving] both the power and the *intention* at a given time to exercise dominion and control over a thing") (emphasis added); *In re T.M., supra,* 577 A.2d at 1151 n. 5 (recognizing that, traditionally, our case law has not explicitly specified that intent to guide destiny of contraband is an element of constructive possession, but suggesting that point may be explicit in certain decisions and noting explicit intent requirement in District of Columbia jury instruction on constructive possession).

**7.** I have been unable to find another jurisdiction that, absent a statutory presumption, permits an inference of intent solely from plain view and proximity. *See, e.g., Hishaw v. Oklahoma,* 568 P.2d 643, 644–45 (Okla.Crim.App. 1977) (finding evidence insufficient to prove possession where drugs were in plain view on floor of car near appellant's feet, and noting that "mere presence of the defendant in even such a confined area as an automobile interior in which illicit drugs are found does not, standing alone, constitute sufficient proof of his possession of such drugs").

of the intent element. Further, assuming that intent is a requisite element for constructive possession, the question before us becomes whether permitting a sufficient inference of intent to possess contraband from presence in plain view and proximity of contraband is reasonable, reliable and consistent with the statutory offense.

With respect to the reasonableness of the inference, the first and obvious point is that we all know from personal experience that it is not necessarily so. Whenever we stand or sit in a bus, train, car or airplane, for example, we are of necessity in close proximity to the belongings of others and have an opportunity to see them and have ready access to them. We could, presumably, reach over to the seat next to ours, under the seat or into overhead bins and racks. That knowledge and proximity, however, do not mean that we intend to exercise control over our neighbor's belongings—not even if we continue to have knowledge of those belongings and to be in such close proximity to them during a long flight or train trip. Should the fact that the instant situation involves the passenger of a car make a difference? We have recognized that the "close[ ] confines" of a car may allow certain inferences. *In re F.T.J., supra,* 578 A.2d at 1162. Trains and planes also are confined spaces, however, and, if we were to limit the rule to cars, what about the passenger of a taxi who finds contraband on the seat left by the former passenger? Is this a special rule for private vehicles? And if so, what is it about such vehicles that makes the inference a realistic one? Or does the inference follow from a presumed relationship among the occupants of a vehicle that may apply in certain situations (*e .g.,* where the passengers have a prior relationship) but not to others (*e.g.,* hitchhiker)? *See County Court of Ulster County v. Allen,* 442 U.S. 140, 163, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (holding that fact that respondents were not " 'hitchhikers or other casual passengers' " supported inference of gun possession).

In evaluating inferences, we must be conscious of a second point, that an inference, to be permissible, may not be based on another inference, or else the jury's verdict risks coming too close to being speculative, not evidence-based. In cases inferring intent from knowledge and proximity, however, inferences upon inferences are rife. In *Burnette, supra,* 600 A.2d at 1084, we permitted an inference that the appellant knew about, and had the ability to exercise dominion and control over, a weapon that he could feel where it lay at his feet under the floor mat, but refused to extend to that "plain feel" situation the inference of intent to exercise dominion and control that we had permitted in "plain view" cases. The opinion does not rely on the premise that an inference based on the sense of sight is more reliable than one based on the sense of touch, and it is difficult to see how such a hierarchy of sensory impressions could be justified in the abstract. For example, the aroma of marijuana is as good as, if not a better, indicator of the presence of the drug than its green weed-like appearance. *See Minnick v. United States,* 607 A.2d 519, 525 & n. 10 (D.C.1992) (holding that smell of marijuana alone is sufficient to establish probable cause to search vehicle). One possible reason for the *Burnette* court's rejection of a "plain feel" predicate for an inference of intent might be the view that such a conclusion would require an inference based upon an inference. In *Burnette* we recognized that "the jury could properly infer that appellant must have placed his feet on the mat, felt a large hard object, lifted up the mat, and seen the gun." 600 A.2d at 1083. *Burnette* held that this sufficed to establish the first two prongs of constructive possession: knowledge of the location of the gun and ability to exercise dominion and control over it. *See id.* The court was "unwilling," however, to accept the "additional inference that he intended to exercise dominion over the gun—'to guide [its] destiny.' " *Id.* at 1084 (quoting *In re T.M., supra,* 577 A.2d at 1151 n. 5). The court did not explain its

unwillingness. If the rationale was that the "plain feel" case involved one too many inferences, it is difficult to see how an inference of intent from "plain feel" is all that more speculative than the inference of knowledge and ability to control, permitted in *Burnette*, which were drawn from *three* cumulative inferences: an inference that appellant saw the gun drawn from an inference that he must have lifted the mat drawn from an inference that he must have placed his feet on the mat and felt the bulge. Perhaps the court felt that the "intent" requirement has a subjective component that should not be based exclusively on objective factors. However, that reluctance would apply with equal force to an inference of intent in plain view cases. The more likely reason, therefore, is that the court's unwillingness in *Burnette* to extend the inference of intent to "plain feel" cases was due to the view that the "plain view" situation had already been decisively determined by the court, but that the rationale "should not be extended beyond [that] situation[ ]." [8] *Id.* at 1084. In other words, the court refused to slip down the slope and engaged in classic line-drawing, albeit without explaining why the line was being drawn at that particular point. I agree with *Burnette* that it is prudent to restrict the inferences that may be drawn from other inferences, lest the jury be engaged in a possible—yet totally imagined—construct of the incident.

8. As discussed earlier, however, the inferential Pandora's box had not necessarily been opened as wide as purported by the language in the "plain view" cases because the facts in those cases provided additional support for an inference of intent.

9. Unlike in *County Court of Ulster County v. Allen, supra*, the issue before us is not the constitutionality of a presumption created by the legislature, but whether a judicially-created inference is consistent with the statutory offense of possession. In any event, it is worth noting that in that case, the Supreme Court did not pass on the facial constitutionality of New York's statutory presumption that a person in a car that contains guns possesses the guns. Rather, the Supreme

A third and, for me, decisive, reason for questioning the wisdom of inferring intent to possess from plain view and proximity of contraband is that by sanctioning such an inference in the course of an adjudication, we risk judicially altering the nature of the offense created by the legislature. If close proximity in a car to contraband in plain view is sufficient to permit an inference that conclusively establishes constructive possession, we are effectively imposing, as a matter of judicial interpretation, an obligation on an innocent passenger who discovers such contraband to take affirmative steps to disembark or in some other (at this point undefined) way, distance herself or himself from the offending substance. The statutory offense, however, is *possession* of a scheduled substance, not *contiguous presence with* a scheduled substance or *failure to disassociate* from such a substance. And how, realistically, is a passenger in a car to do so? By its very nature, a car is a confined space engaged in movement, which makes immediate distancing impractical and, possibly, even perilous. There is nothing in the language of D.C.Code § 33–541(a)(1) to imply that the legislature intended to impose such a duty on pain of conviction of possession. There are statutes that create a presumption that passengers in a car are deemed to possess contraband in the car, *see Allen, supra*, 442 U.S. at 142 n. 1, 99 S.Ct. 2213 (citing N.Y. PENAL LAW § 265.15(3) (McKinney 1967)), but our statute does not contain such a presumption.[9]

Court ruled, in an *as-applied* constitutional challenge to the statute, that the rebuttable statutory presumption was not unconstitutional because the facts in the case were sufficient to support a finding of constructive possession. 442 U.S. at 141, 99 S.Ct. 2213. In that case, four occupants of a car were convicted of possessing two loaded handguns that were found half secreted in the open handbag of a sixteen-year-old girl seated on the front passenger seat. The Court reasoned that the analysis was no different than if the guns had been in plain view and accessible to the other three occupants in the car. 442 U.S. at 163, 99 S.Ct. 2213. The Court emphasized an additional fact that linked the three occupants to the guns:

The dictionary meaning of "possess" implies a certain active dominion or control, "to have and hold as property ... be master of ... to take into one's possession: seize or gain control of: make one's own". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1770 (1986). It exceeds the judicial function to stray from the commonly-understood meaning of "possession" in defining "constructive possession" which, as we have recognized, is "a proxy for *actual* possession, *e.g.*, in one's hand, pocket or lap." *Burnette, supra*, 600 A.2d at 1084. The inferences we sanction, as a judicially-created proxy, should not overtake the meaning that the legislature intended.

For these reasons I believe the full court could helpfully review the entire issue and decide whether to reaffirm that intent to exercise dominion and control is a required element of constructive possession, and, if so, whether plain view and proximity to contraband, standing alone, are sufficient to satisfy the intent requirement. Intent will almost always have to be inferred from other circumstances. Although, as Judge Farrell states in his concurrence, an objective starting-off point is useful, the desire for certainty should not overshadow fidelity to the statute's purpose. Our case law confirms that even without the benefit of the inference, more probative evidence can be—and is—presented to support the element of intent. *See* cases cited, *supra.*

Turning to the case at hand, apart from the inference of intent from plain view and proximity, there was no evidence presented at trial that supported the conclusion that Rivas was connected to the drugs.

The drugs were found by the police, who had been searching the car with a flash-light during a traffic stop that revealed an open container of alcohol leaning against the center of the back seat. Upon further investigation, the officers discovered two ziplock bags at about knee-level on the front console between the driver's and the passenger's seats, about one inch closer to the passenger's seat. Following arrest, the officers discovered no drugs or money on Rivas. The police found $236 on Melgar, the driver, who testified that he had earned the money at his job. Before the car was stopped by the police, Rivas had left the car to speak to an individual on the sidewalk, leaving the front passenger side door open. The government claims that it did not rely solely on the inference of intent from proximity to the drugs in plain view, but also on Rivas' "odd" and "elusive" behavior that suggested consciousness of guilt. According to the government, by leaving the car door open, Rivas indicated that he intended to return to the car, but did not do so and, instead, began to walk away when the police stopped the car. We have rejected that argument, however, in considering whether, other than by the inference, the government has presented evidence linking the accused to an ongoing criminal operation sufficient to supply evidence of the requisite intent. In *Burnette* we did not permit an inference of consciousness of guilt where the defendant "did not attempt to elude the police by driving away ...., there was no evidence of previous suspicious behavior on which the police were acting at the time they pulled

Moreover, it is highly improbable that the loaded guns belonged to Jane Doe [the 16–year–old girl] or that she was solely responsible for their being in her purse. As a 16–year–old girl in the company of three adult men she was the least likely of the four to be carrying one, let alone two, heavy handguns. It is far more probable that she relied on the pocketknife found in her brassiere for any necessary self-protection. Under these circumstances, it was not unreasonable for her counsel to argue and for the jury to infer that when the car was

halted for speeding, the other passengers in the car anticipated the risk of a search and attempted to conceal their weapons in a pocketbook in the front seat. The inference is surely more likely than the notion that these weapons were the sole property of the 16–year–old girl.

*Id.* at 163–64, 99 S.Ct. 2213. Thus, the convictions were not based solely on the statutory presumption as the particular facts in the case provided additional evidence that all four occupants possessed the guns.

over the car,[10] ... there was no evidence about any of appellant's activities earlier that night, ... and there is no evidence that the [contraband] in the front seat was in appellant's plain view either earlier in the evening or at the time the police pulled over the jeep." 600 A.2d at 1084. All of those elements of proof are also missing in this case. As in *Burnette*, there was no evidence here of the relationship between appellant and the driver. Moreover, in this case, even though Rivas had begun to walk away when the police stopped the car, he returned to the car when the police called to him. In this regard, this case is like *In re M.I.W.*, 667 A.2d 573, 576 (D.C. 1995), where we concluded that there was insufficient evidence to establish consciousness of guilt because we look for more than "walking away," *id.* at 577, which may indicate merely an innocent desire to avoid contact with the police. *See id.* (citing *Smith v. United States*, 558 A.2d 312, 316 (D.C.1989) (en banc)). As in *M.I.W.*, moreover, here "there is no evidence that [Rivas] had been in the car for a substantial period of time before it [was stopped], or that the vehicle had a functional interior light" that might have made it possible to see the drugs at night, at least when the car door was opened. *Id.* at 577. The testimony in this case, as in *In re M.I.W.*,

is that the police had to use a flashlight when they searched the car. In this case, in addition, the police testified that their search was aided by the dome light of their police car. Of course, the police car's dome light was turned on *after* Rivas had exited the car to talk to someone on the sidewalk. As in *M.I.W.*, here there was no evidence connecting Rivas to the car other than his being a passenger in it at the time, no evidence connecting Rivas to drug distribution and no evidence of drugs or money on his person, in contrast to the $236 found on Melgar, the driver.

Therefore, but for the categorical language in *Burnette* and *In re F.T.J.* that proximity to drugs in plain view permitted the jury to infer intent, I would conclude that the evidence was insufficient to prove Rivas' intent to possess the drugs in question. However, as I am bound to follow these cases, I concur in affirming Rivas' conviction.

---

10. In *Burnette*, the car was pulled over to investigate a traffic violation. Similarly, in this case, the police *pulled* over the car because it had broken down and obstructed the street for a few minutes. As soon as the police activated the cruiser's lights, the car complied by moving to the curb.